## GAUTIER *v.* ARTHUR.

1. It was the intention of Congress, so far as the free list in the fifth section of the act of June 6, 1872, c. 315 (17 Stat. 233), is concerned, to put an end to the discriminating duties imposed by the seventeenth section of the act of June 30, 1864, c. 171. 13 id. 215.
2. Plumbago, being embraced in that list, was not, although imported in a foreign vessel, subject to duty.

ERROR to the Circuit Court of the United States for the Southern District of New York.

The facts are stated in the opinion of the court.

*Mr. Abram Wakeman* for the plaintiffs in error.

*The Solicitor-General, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

This is an action to recover duties paid on goods, consisting of over eight hundred barrels of plumbago, imported into the United States by a French vessel, in July, 1873, from Columbo, in the Island of Ceylon.

The plaintiffs, who are the importers, claim that the goods were exempt from duty under the fifth section of the act of June 6, 1872, c. 315 (17 Stat. 233), "to reduce duties on imports," which places plumbago on the free list, and exempts its importation from duty after the 1st of August of that year. The collector held that the goods were liable to duty under the seventeenth section of the act of June 30, 1864, c. 171. 13 id. 215. The amount exacted was accordingly paid under protest. That section provides, with certain exceptions not material in this case, that a discriminating duty of ten per centum *ad valorem,* " in addition to duties imposed by law," shall be levied upon all goods subsequently imported in ships or vessels not of the United States.

The contention of the government is that this seventeenth section imposes a duty upon all goods imported by foreign vessels, — upon such as were previously free as well as those already subjected to duty; and that the fifth section of the act of 1872 was not designed to affect the discrimination prescribed, and must be, therefore, limited in its application to goods imported in vessels of our own country.

The policy of discriminating against the importation by foreign vessels at all, would seem to require that no distinction should be made between the two classes of goods. The encouragement of importation by vessels of our country would be greater by extending the discrimination to all goods, than by limiting it to those upon which a duty was previously imposed. A construction of the section, in harmony with this view, is not an unreasonable one. In our judgment it best carries out the purposes of the act in imposing a discrimination; and it conforms to the construction which this court, in *Hadden* v. *The Collector*, reported in the 5th of Wallace, gave to the succeeding section of the same act, or rather to one containing the same provisions.

But assuming this construction to be correct, the second part of the contention of the government does not necessarily follow. If the fifth section of the act of 1872 stood alone, it might, with much reason, be claimed that it was not intended to affect the discrimination prescribed by the act of 1864. But it does not stand alone. The general repealing clause of the statute declares that all acts and parts of acts inconsistent with its provisions are repealed; and it excepts from its operation the provisions of certain other acts, among which the discriminating section of the act of 1864 is not mentioned. Both from the general language of the repealing clause, and the enumeration of the provisions of acts excepted from it, we are forced to conclude that it was the intention of Congress to put an end, so far as the free list in the fifth section of the act of 1872 is concerned, to the operation of the discriminating act of 1864. This conclusion necessarily disposes of the case and requires a judgment of reversal.

The Circuit Court founded its decision upon the eighteenth section of the act of 1864, which provided that, after it took effect, there should be levied on all goods " of the growth or produce of countries east of the Cape of Good Hope " (except raw cotton), when imported from places west of the cape, a duty of ten per centum *ad valorem* in addition to the duties imposed on such articles when imported directly from the place or places of their growth or production. But it is evident that the section has no application to the case at bar, for the goods

upon which the duties were levied were imported directly from Ceylon, which, as we know, is east of the Cape of Good Hope, and not a place this side of it. And in founding its decision on that section the Circuit Court also seems to have assumed that the plumbago was of the produce of the island; but of that fact there was no proof in the case. Unless it was so proved, even upon the hypothesis of the court, there was no reasonable pretence for exacting the duty. If the assumed fact were found in the case, the section referred to would not, as stated, apply; nor would the sections of the act of 1865 and 1872, which re-enact its provisions with the exceptions enlarged.

As the facts in this case are agreed to by counsel, it will not be necessary to order a new trial, but the judgment will be reversed and the court below directed to enter a judgment for the plaintiffs for the amount of duties paid, with legal interest and costs; and it is

*So ordered.*