## HOLLENDER v. MAGONE.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 172. Argued April 10, 1893. — Decided May 10, 1893.

The word "liquors" is frequently, if not generally, used to define spirits or distilled beverages, in contradistinction to those that are fermented. It is so used in Schedule H of the tariff act of March 3, 1883, 22 Stat. 505, c. 121.

The word "liquors" as used in that section is obviously the result of misspelling, "liqueurs" being intended.

The multitude of articles upon which duty was imposed by the tariff act of 1883, are grouped in that act under fourteen schedules, each with a different title, and all that was intended by those titles was a general suggestion as to the character of the articles within the particular schedule, and not any technically accurate definition of them.

Generally speaking, a "sound price" implies a sound article. It appearing that the cost of the beer in question at the place of export, was equivalent to $17\frac{70}{100}$ cents per gallon, and that upon being examined in New York much of it was thrown into the streets as worthless, that but little of it was sold, and that for three cents per gallon, it may be assumed that it was a sound article when shipped at the place of export.

THE facts in this case are these: On October 19, 1886, the plaintiffs imported and entered at New York 226 casks, aggregating 2861 gallons of beer, on which the defendant, as collector of the port, exacted duty at twenty cents a gallon. This was paid by the plaintiffs under protest, they insisting that the beer had become sour and worthless on the voyage of importation. They applied on October 26 for a rebate on account, and to the extent, of this damage, under Rev. Stat. § 2927, which is as follows:

"SEC. 2927. In respect to articles that have been damaged during the voyage, whether subject to a duty ad valorem, or chargeable with a specific duty, either by number, weight, or measure, the appraisers shall ascertain and certify to what rate or percentage the merchandise is damaged, and the rate of percentage of damage, so ascertained and certified, shall be deducted from the original amount, subject to a duty ad

valorem, or from the actual or original number, weight or measure, on which specific duties would have been computed."

But this application was refused on the ground that such an allowance was prohibited by a proviso in Schedule H, act of March 3, 1883, 22 Stat. 505, c. 121, which says " there shall be no allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits." Thereafter this suit was brought, and on the trial thereof the court instructed the jury to find for the defendant. 38 Fed. Rep. 912. Judgment having been entered on such verdict, plaintiffs sued out a writ of error from this court.

*Mr. Edwin B. Smith* for plaintiffs in error.

*Mr. Assistant Attorney General Maury* for defendant in error.

There is no evidence that the price of $17\frac{70}{100}$ cents per gallon, paid for the beer in Germany, was a " sound price." Because the statute authorizes the invoice to be taken at the custom-house as evidence of dutiable value does it follow that it may be used as evidence by the plaintiff in a personal action against the collector? The invoice here is not invoked to prove market value generally, (" Clicquot's Champagne," 3 Wall. 141, 148,) but to prove that the particular merchandise here in question was in good condition when shipped at the place of export. The invoice as well as the bill of lading, is, as to the collector, sued here for an abuse of official power, *res inter alios acta.*

"Liquors" is not a term of trade and commerce and cannot be filched from the general vocabulary by any presumption that it was used in a commercial sense. The attempt here is the same in character as was made in *Maillard* v. *Lawrence,* 16 How. 251, and in *Arnold* v. *United States,* 147 U. S. 494.

The effect of the provision of the act of March 3, 1883, denying the right to damage allowance on liquors under section 2927 of the Revised Statutes is to restrict the operation of a law in *derogation of the revenue,* and, therefore, the provision should be liberally interpreted. There is no natural

equity on the side of the importer to be exempt from paying duty on the invoice value of merchandise damaged on the voyage. He takes such risks and has no right to exemptions unless clearly given by the law. The labored attempt to *invent* a restrictive meaning for the repealing clause, and the invitation to this court to go to the unheard of length of narrowing the sense of that clause by substituting the French word "liqueurs" for the English "liquors" seem to reverse an established canon of interpretation. It will be a long time before this court will be found exercising its ingenuity for the purpose of extending the operation of exemptions from taxation.

For the true meaning of "liquors" see *People* v. *Crilley,* 20 Barb. 246, 248.

Mr. Justice Brewer, after stating the case, delivered the opinion of the court.

The principal question in this case is, whether beer is within the term "liquors," as found in the proviso quoted. The arguments in favor of such a conclusion are these: First. The word "liquors" is properly and often used in a generic sense, as including all intoxicating beverages, and it ought, therefore, to be construed as having that general meaning in this clause, for if Congress had intended only a certain kind of liquor it would have coupled some word of limitation with it. Second. Schedule H, in which is found this proviso, and which in its various paragraphs specifically mentions different kinds of liquors, and among them beer, is entitled "Liquors." And the schedule being thus, as it were, introduced by this term, used obviously in its generic sense, it must be presumed that wherever the word is found within the schedule, it is also used in the same sense. Third. Unless "liquors" is given a meaning broad enough to include beer, it is superfluous, for "wines, cordials, and distilled spirits" are ample to cover all intoxicating beverages other than malt liquors, such as ale and beer. Granting that there is force in these arguments, we are constrained to hold that they are not so persuasive and convincing

as those tending to show that the word is here used in a narrower sense, and so as to exclude beer.

In the first place, the word "liquors" is frequently, if not generally, used to define spirits or distilled beverages, in contradistinction to those that are fermented. Thus, in the Century Dictionary, one of its definitions is: "An intoxicating beverage, especially a spirituous or distilled drink, as distinguished from fermented beverages, as wine and beer." See also *State* v. *Brittain*, 89 N. C. 574, 576, in which case the court said: "The proof was that the defendant sold liquors, and it must be taken that he sold spirituous liquors. Most generally the term liquors implies spirituous liquors." The context indicates that it is here used in this narrower sense. The proviso names wines, liquors, cordials, and distilled spirits. If "liquors" is here used in its generic sense, the other terms are superfluous. That they are present emphasizes the fact that the word is not so used.

Again: In one paragraph in this section we find this combination: "Cordials, liquors, arrack, absinthe, kirschwasser, ratafia, and other similar spirituous beverages or bitters, containing spirits." Obviously the word "liquors" here means liqueurs, that being the name of the kind of drinks of the same general nature as those specially mentioned. This is obvious not alone because of the rule *noscitur a sociis*, but by a reference to the language found in prior tariff acts. Thus, in that of 1842, is this language: "On cordials and liqueurs of all kinds, sixty cents per gallon; on arrack, absinthe, Kirschen wasser, ratafia, and other similar spirituous beverages, not otherwise specified, sixty cents per gallon." 5 Stat. 560. In 1846, we find this: "Brandy and other spirits distilled from grain or other materials; cordials, absinthe, arrack, curacoa, kirschenwasser, liqueurs, maraschino, ratafia, and all other spirituous beverages of a similar character." 9 Stat. 44. In 1861, this is the language: "On cordials and liquors of all kinds, fifty cents per gallon; on arrack, absinthe, kirschen wasser, ratafia, and other similar spirituous beverages." 12 Stat. 180. In 1862, the following: "On cordials, and liqueurs of all kinds, and arrack, absinthe, kirschenwasser, ratafia, and

other similar spirituous beverages, not otherwise provided for, twenty-five cents per gallon." Id. 544. While in 1870, this is the description : "On cordials, liqueurs, arrack, absynthe, kirschenwasser, vermuth, ratafia, and other similar spirituous beverages, or bitters containing spirits, and not otherwise provided for, two dollars per proof gallon." 16 Stat. 263. And this language, omitting vermuth, was carried into the Revised Statutes. p. 464.

This retrospect of past legislation, as well as the character of the other beverages named in combination, indicates the meaning of the word "liquors" as found in this paragraph of the statute of 1883. It is simply a case of misspelling, and "liqueurs" was intended. The use of the word in one part of the body of the statute in conjunction with the term cordials and obviously misspelled, and as obviously meant for "liqueurs," is very persuasive that, when found in another part of this same schedule in like conjunction with the word "cordials," there is another case of misspelling, and "liqueurs" is also there intended.

But, further, the whole arrangement of Schedule H points to the fact that beer was not in the contemplation of Congress in this proviso. The schedule is composed of eleven separate paragraphs. The first treats of champagnes, and all other sparkling wines, and names the duty thereon ; the second provides for duties on still wines, and them alone. In that paragraph are two provisos: First, "Provided, that any wines imported, containing more than twenty-four per centum of alcohol, shall be forfeited to the United States," and, second, the proviso in question. The third names vermuth alone. The fourth requires that "wines, brandy and other spirituous liquors imported in bottles shall be packed in packages containing not less than one dozen bottles in each package," and provides for an additional duty on each bottle. The fifth imposes a duty on "brandy and other spirits manufactured or distilled from grain or other materials, and not specially enumerated or provided for in this act," and declares the standard for determining the proof of brandy and other spirits or liquors. The sixth on all compounds or preparations of which distilled

spirits are a, component part of chief value, not specially enumerated, &c. The seventh is that heretofore mentioned in reference to cordials, liquors, &c. The eighth provides that no lower rate of duty shall be collected or paid on brandy, spirits and other spirituous beverages, than that fixed by law for the description of first proof, but it shall be increased, &c. The ninth imposes a duty on bay rum, or bay water, whether distilled or compounded. The tenth on ale, porter, and beer. And the eleventh on ginger ale or ginger beer.

The facts that ginger ale and ginger beer are not intoxicating, and that bay rum and bay water would scarcely be called beverages, show that there is little significance to be given to the use of the word "liquors" in the title of this schedule. The multitude of articles upon which duty was imposed by the tariff of 1883 are grouped in that act under fourteen schedules, each with a different title, and all that was intended by those titles was a general suggestion as to the character of the articles within the particular schedule, and not any technically accurate definition of them. It evidently seemed to Congress unnecessary to create and entitle a separate schedule for the matters named in these last three paragraphs, and they fall more naturally under the descriptive title "liquors," than any other used in the act. This takes away largely the force of any argument that can be drawn from the word in the title.

Again the proviso is found in the second paragraph. The natural limitation of a proviso is to those things that have been previously mentioned. Before the proviso, there are named only wines — sparkling and still; so any word of general description used therein would, in the absence of satisfactory reasons to the contrary, be taken to refer to those articles, to wit, wines. But "wines" being used in this proviso, the subsequent terms, liquors, cordials and distilled spirits, must mean something else. As there are several words of description, apparently beverages of different character were intended by each. If, for instance, in any clause we should find the two terms "wines" and "distilled spirits," we should believe that some different article was intended by each term. So, if we should find the phrase "wines and liquors," or "wines or

liquors," is it not a proper inference that some other kind of beverage than wine was intended by the word "liquors"? Obviously, as it seems to us, the word is used here in a special, rather than a general sense; and when so used in a special sense, it is almost invariably used to define spirituous rather than malt liquors. Seldom is it used alone to define malt liquors, as contradistinguished from those that are spirituous and distilled.

In short, we think it may be laid down as a general proposition, that where the term "liquors" is used in a special sense, spirituous and distilled beverages are intended, in contradistinction to fermented ones; that the use of the four words in this proviso, in the order in which they are arranged and in the place in which the proviso is found in the schedule, indicates that "liquors" is used in a special rather than in a general sense; and the conjunction of the words "liquors" and "cordials," as found in another paragraph, and as interpreted by the past history of that particular part of the tariff legislation, shows that "liqueurs" was intended by "liquors" in this clause.

But it is further objected by counsel for the government that there was no proof that the beer was sound when purchased. Generally speaking, it may be said that a sound price implies a sound article. The bill of exceptions shows that "it further appeared from the invoices and the testimony of the liquidating clerk that the cost of this beer in Germany, the place of export, was equivalent to $17\frac{70}{100}$ cents per gallon in the money of account of the United States." How the invoices read, and what was the testimony given by the liquidating clerk, is not shown; the result only is stated when it said that it appeared that the cost of this beer was $17\frac{70}{100}$ cents per gallon. As most of the beer on its arrival in New York was thrown into the street as worthless, and only a little of it sold, and that at three cents per gallon, it may be assumed that that was a sound article for which the much greater price was paid at the place of export. Evidently the testimony in all these respects was considered sufficient, for the Circuit Judge, as appears from the report in the Federal

Reporter, 38 Fed. Rep. 916, disposed of the case by saying, "As this case turns upon the construction of the term liquors in the proviso of Schedule H, paragraph 308, I shall direct a verdict for the defendant."

*The judgment will be reversed, and the case remanded for a new trial.*