MURPHY et al. v. UNITED STATES.

(Circuit Court, S. D. New York. June 10, 1895.)

No. 2,107.

1. CUSTOMS DUTIES—CLASSIFICATION—WORSTED DRESS GOODS.
    Under the act of 1894, "worsted dress goods" are dutiable at 50 per cent. ad valorem, under paragraph 283, Schedule K, and not at 12 cents per square yard and 50 per cent.

2. SAME.
    Paragraph 297, postponing reduction of duty on "manufactures of wool," does not include manufactures of "worsted," and the distinction between "wool" and "worsted," stated in the earlier tariff acts, still exists, though omitted in the act of 1894.

3. SAME—CONSTRUCTION OF STATUTE.
    Where language of a statute is explicit, it must be strictly construed; and held, that "worsted dress goods" are not "manufactures of wool," but of "worsted."

This was an appeal by Alexander Murphy and others, importers, from a decision of the board of general appraisers sustaining the

action of the collector of the port of New York in respect to the classification for duty of certain merchandise.

W. Wickham Smith, for importers.

Jas. T. Van Rensselaer, Asst. U. S. Atty., for the United States.

TOWNSEND, District Judge. On August 30, 1894, the appellants imported and entered for duty at the port of New York certain worsted dress goods. The importers claimed they were dutiable at 50 per cent. ad valorem, under paragraph 283, Schedule K, of the tariff act of August, 1894. They were classified for duty at 12 cents per square yard and 50 per cent. ad valorem, under the provisions of paragraph 395, Schedule K, of the tariff act of October 1, 1890. The board of general appraisers sustained the assessment, and the importers appealed. The single question presented by the appeal is whether these goods are dutiable under the earlier or later act.

It is admitted that these goods are made from the fleece of the sheep, and are, in that sense, a product of wool. The earlier tariff acts provided rates of duty on manufactures of wool differing from those on manufactures of worsted, and recognized wool and worsted as different materials. The tariff acts of 1890 and 1894, while retaining the distinction in terminology, provided the same rates of duty for woolen as for worsted goods. The courts have repeatedly recognized and enforced this distinction between wool and worsted, and have uniformly held that manufactures of worsted were not manufactures of wool, within the meaning of the tariff acts. Elliott v. Swartwout, 10 Pet. 137; Riggs v. Frick, Taney, 100;[1] Seeberger v. Cahn, 137 U. S. 95, 11 Sup. Ct. 28; Ballin v. Magone, 41 Fed. 921. It is urged on behalf of the government that the term "manufactures of wool" is used descriptively, and not denominatively, in this act of 1894. Paragraph 297 of said act reads as follows: "The reduction of the rates of duty herein provided for manufactures of wool shall take effect January 1, 1895." The heading of said Schedule K is, "Manufactures of Wool." In support of this contention, counsel for the government introduced in evidence various official documents, letters to the chairman of the finance committee of the senate, and other papers, tending to show that the same reasons existed for a postponement of duties on all the products of the sheep's fleece. It appears, however, that in the tariff bill as it first passed the house of representatives there was a further provision applying to all rates of duty in the woolen schedule except carpets, which provision was afterwards stricken out in the senate. Counsel for the government further claims that the distinction between wool and worsted in the decisions cited is based upon the fact that congress had in these earlier acts created and preserved the distinction for tariff purposes, thus creating a statutory, as contrasted with a commercial, distinction; and that, as this artificial distinction no longer exists, it should not be applied in the construction of the present act. But the

[1] Fed. Cas. No. 11,825.

distinction in terminology, as already shown, has been uniformly preserved, and in Ballin v. Magone, 41 Fed. 921, Judge Lacombe, referring to the provisions of the act of 1883, says:

"The tariff act itself, however, recognizes a difference between woolen and worsted articles; between goods composed of worsted and goods composed of wool: We find the words 'wool' or 'worsted' used in contrast at least six times in this very schedule; and the examination of successive tariff acts, back to, I think, 1816, shows an unbroken continuance of such contrasting use. It seems plain, therefore, that the words 'woolen cloths,' used in the paragraph on which the defendant relies, are to be taken as including only those woolen cloths which are not worsted, or composed of worsted, within the meaning of those terms (that is, 'worsted,' or 'composed of worsted'), as used in this tariff."

In five of the instances above referred to as illustrations of this distinction the rates of duty were the same. The schedule in question is entitled "Wool and Manufactures of Wool." It is well settled that the title of an act may legitimately be resorted to as an aid in determining legislative intent when that intent is otherwise ambiguous. But the supreme court of the United States has recently held, in Hollender v. Magone, 149 U. S. 586, 13 Sup. Ct. 932, and Seeberger v. Schlesinger, 152 U. S. 581, 583, 14 Sup. Ct. 729, that such titles to the schedules in a tariff act are merely intended as general suggestions of the character of the articles within such schedule. · Under the above title are included not only articles made from the fleece of the sheep, but also those made from the hair of the camel, goat, alpaca, and other animals, and certain manufactures of flax and cotton. It is not claimed by the government that the paragraph in question refers to goods made from the hair of animals other than sheep, or to any goods except such as are composed of wool or worsted. In Reiche v. Smythe, 13 Wall. 162, 164, and Maddock v. Magone, 152 U. S. 368, 371, 14 Sup. Ct. 588, it is held, in reference to the construction of tariff acts, that when the same word is used in successive acts, and special meaning was attached to said word in a former act, it will be presumed, in the absence of evidence of a contrary intention, that it was intended that said word should receive the same interpretation in the later act. It is claimed by the government that such evidence of a contrary intention is furnished in this case by the policy of the government as indicated in the letters and official documents already referred to, and in the considerations of inconvenience which would arise from the construction contended for by the importer. That the distinction was directly brought to the attention of congress and acted upon by it; that congress has failed to use the word "worsted" in said paragraph 297; that under the title "Wool and Manufactures of Wool" are included articles not composed of wool,— strongly suggest that congress may not have intended to include "worsted" under "manufactures of wool," and seem to rebut the claim of the counsel for the government that congress intended to give to the word "wool" a different signification from that which it had previously borne. The opinion of the supreme court of the United States in Refrigerating Co. v. Sulzberger, 15 Sup. Ct. 508, states the guiding principles of construction and interpretation in

such a case. The court there holds that when the language of an act is explicit there is great danger in departing from the words actually used, in order to give effect to the supposed intention of the legislature, and that in such circumstances the court should not so construe the statute as to embrace cases, because no good reason can be assigned why they were not included within its provisions. The court further emphasizes the rule that it is not for the court to add to or subtract from the express provisions of the law, but only to interpret the law as it exists, leaving to congress to make provision for cases where such enactment may operate unjustly. In view of the failure of congress to make any distinction between the various classes of articles in said schedule, other than by the use of a word in the title, which, by the settled definition of courts and legislature, excluded the articles in question, and in the absence of any positive evidence of intention to include said articles within the provisions of said paragraph, I think it would be a violation of the principles of construction and interpretation to extend the language of said paragraph so as to include "worsted goods." The decision of the board of general appraisers is reversed.