COURTS — CONFLICTING JURISDICTION — PATENTS — SUIT FOR INFRINGEMENT — GROUNDS FOR STAY.

The pendency of a suit for infringement of a patent is not ground for staying a second suit in another circuit against a different defendant for infringement by a different machine.

On Motion for Stay.

Niles & Johnson, for the motion.
S. R. Betts and Wm. A. Redding, opposed.

LACOMBE, Circuit Judge. This is a motion to restrain the prosecution of this suit, which is brought for alleged infringement of the Selden patent in the use of a foreign-made machine (a "Mercedes") imported by defendant for his own use. The ground of application is that there is pending in some other circuit a suit for alleged infringement of the Selden patent brought against the manufacturer of the Ford Machine, and this court is asked to suspend the prosecution of this suit until after the Ford suit is determined.

If defendant were using a Ford machine, or if he were asking to have prosecution suspended until the decision of some prior suit against a maker, seller, or a user of a Mercedes machine, the application would probably commend itself to the court; but there seems neither authority nor any sound reason for granting it under existing circumstances.

COURTIN, GOLDEN & CO. v. UNITED STATES.

(Circuit Court, S. D. New York.  January 4, 1906.)

No. 3,898.

1. CUSTOMS DUTIES—FRUIT IN PACKAGES—ALLOWANCE FOR DECAY.

The rule that the duty on fruit should be assessed only on the sound and merchantable portion, allowance being made for such as is rendered worthless, and unsalable through decay, *held* to apply to fruit in packages, even though the decayed portion is not separated, but, after being removed for the purpose of estimating its quantity, is replaced in the package and sold with the good fruit.

2. SAME—MEASUREMENT—ALLOWANCE FOR ROTTEN FRUIT—EVIDENCE.

For the purpose of ascertaining the percentage of decay in importations of fruit, the importers opened at least one package in ten of the consignments from each shipper; and the percentage thus estimated was assumed to prevail throughout the other packages, and was accepted by the bidders at the auction sales held immediately on the dock. *Held*, that this method of averaging constituted a reasonably certain and sufficient mode of proof, and should be accepted by the customs officers as a proper basis for making allowance for the decayed fruit.

On Application for Review of a Decision of the Board of United States General Appraisers.

The decision in question affirmed the assessment of duty by the collector of customs at the port of New York. Note Stone v. Shallus (C. C. A.) 143 Fed. 486.

Curie, Smith & Maxwell (W. Wickham Smith, of counsel), for importers.

D. Frank Lloyd, Asst. U. S. Atty.

PLATT, District Judge. The Board affirmed the decision of the collector, who assessed, under Tariff Act July 24, 1897, c. 11, Schedule G. par. 266, 30 Stat. 172 [U. S. Comp. St. 1901, p. 1651], a duty of one cent per pound on the entire importation, which consisted of oranges, lemons, and grape fruit. The importers claim to have satisfactorily shown that certain portions of the various consignments covered by the invoice were absolutely decayed and worthless, and were not, therefore, subject to any duty when they reached our shores, invoking the principle of Lawder v. Stone, 187 U. S 281, 23 Sup. Ct. 79, 47 L. Ed. 178. The reasoning of the Board fails to persuade me. It is found in the opinion submitted in Rathbun's Case, G. A. 5,865, T. D. 25,843, which is made the basis of the action taken herein. It undertakes to distinguish that matter from the Lawder v. Stone decision in several ways:

First. Because the portion of the pineapples found undutiable in the Lawder Case were "worthless slush, commercially valueless, condemned under the sanitary regulations of the city of Baltimore, and dumped overboard," while in Rathbun's Case some of the fruit claimed to be undutiable "brought prices equivalent to the market price of sound fruit." However that may have been in Rathbun's Case, the evidence in the matter before me shows clearly that the percentage of reduction claimed is based upon absolutely worthless stuff, and that, although it was sold in the packages with the good fruit, the amount which the packages brought at auction was based upon the actual percentage of thoroughly decayed and commercially valueless matter.

Second. Because in the present case the bad fruit was delivered from the vessel in packages with sound fruit, and after investigation as to the percentage thereof was placed back in the package and sold with the good fruit. I discover no force in this point. Fruit which is so far decayed as to be absolutely unfit for commerce is no more the subject of duty, because it remains in close conjunction with admittedly good fruit, than if it were kept apart and condemned by health authorities.

Third. Because "the importer has failed to show with sufficient certainty and by satisfactory evidence the quantity of merchandise, if any, which was so destroyed as to become valueless," and that under the rule of the Lawder Case "the mere fact that goods were damaged, so as to be merchantable to a less extent than sound fruit, should not * * * constitute a nonimportation." This latter suggestion seems to imply that in Rathbun's Case the individual oranges

were found to have been to some extent injured, but not absolutely worthless. There is no such testimony in this case. In the case before us the importers arrived at the portion of the fruit which was entirely decayed in this way: The importation consisted of various consignments packed on the other side at different times and by different packers. From each consignment at least one package out of ten was opened and examined, and the rotten fruit separated from the good. The percentage of loss in that package was assumed to prevail through all the packages put up at the same time and by the same parties. This was done by the inspectors in charge of the auction sale, which took place at once on the dock, and the percentage of rot so fixed was accepted by the bidder in fixing a price upon the consignment. This plan is good enough for the government in getting at the contents of a number of packages of imported merchandise, and ought not to be unduly criticized by the government when it is invoked by the importer. As to the certainty and sufficiency of proof, it would seem that the importers have arrived at their averages in a reasonable way, and that the method adopted is as good as the one applied in the Lawder v. Stone Case. The citation of Hollender v. Magone, 149 U. S. 586, 13 Sup. Ct. 932, 37 L. Ed. 860, is unpersuasive.

The importers are entitled to have considered as nonimportations the percentages of rotten fruit indicated on the different shipments, and the decision of the Board of General Appraisers is reversed.