MYERS v. UNITED STATES (No. 454).[1]

1. MINERALS—NEW NAME FOR PROCESS PRODUCT NOT ESSENTIAL.

To exclude minerals from the provisions of paragraph 614 covering "minerals crude and not advanced in value or condition by refining, grinding, or other process of manufacture," it is not essential that the product of such process be given a new name.

2. CORUNDUM ORE CONCENTRATES, BY SIMILITUDE, EMERY.

Corundum ore obtained from rocks that have been quarried and crushed fine enough to be passed through the meshes of sieves and, after being washed, graded according to size, can not be regarded as either crude or manufactured sand, or as a crude mineral, but must be taken rather to be a mineral extracted by process from a crude mass of matter; it differs from emery only in being substantially free from impurities, and so was dutiable by similitude as emery, ground, under paragraph 419, tariff act of 1897.—Myers v. United States (163 Fed. Rep., 53), Rossman v. United States (T. D. 31321); Hartranft v. Wiegman (121 U. S., 609) distinguished.

United States Court of Customs Appeals, April 17, 1911.

TRANSFERRED from United States Circuit Court of Appeals, New York (T. D. 30470; 178 Fed. Rep., 462).

[Affirmed.]

*Walden & Webster* for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Wm. A. Robertson* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this case was invoiced as corundum ore concentrates. It is in fact a product of corundum, crushed and ground to different degrees of fineness, and divided into grades more or less uniform in size. It was assessed for duty at the rate of 1 cent per pound as having a similitude to emery, ground, provided for by paragraph 419 of the tariff act of 1897, the pertinent provision of which reads as follows:

Emery grains, and emery manufactured, ground, pulverized, or refined, one cent per pound. * * *

The importer claims first that the merchandise was subject to free entry under paragraph 671 and alternatively under paragraph 614 of the tariff act of 1897. The two paragraphs read as follows:

671. Stone and sand: Burrstone in blocks, rough or unmanufactured; cliff stone, unmanufactured; rotten stone, tripoli, and sand, crude or manufactured, not otherwise provided for in this act.

614. Minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture, not specially provided for in this act.

The first question presented is whether the article is sand within the meaning of paragraph 671. It is certainly not crude sand, as will

---

[1] Reported in T. D. 31531 (20 Treas. Dec., 822).

be seen by the description of the process of manufacture. Is it manufactured sand within the meaning of section 671?

The material occurs in nature in the form of a rock which is quarried out of the earth and is found, according to the testimony of the importer's witnesses, in various kinds of rocks, and the process of manufacture is described by the witness as follows:

> After this rock is taken from the quarry we take it to the mill and it is crushed with a large-jawed crusher. It is crushed until we crush it fine enough to pass through the various sieves or meshes of the sieve as shown in Exhibit 1. * * *

He also testified that water is used to wash away the impurities, and it is then graded according to its size, placed in bags, and shipped.

The testimony shows that the rock from which this material is made is sometimes called "ore," and would seem from the testimony to be of little value when lying in the earth. The finished product represented by the present importation is worth 5 cents per pound or $100 a ton in Canada where made. It will be noted that the word "sand" is used in the same paragraph with "burrstone," "cliff stone," "rotten stone," and "tripoli," all of which are cheap materials and mainly composed of siliceous rock.

There are many definitions of the word "sand" which would cover the importation in question. But it often is given a more restricted meaning, as for instance, in Webster's Dictionary, sand is defined as—

> Fine particles of stone, especially of siliceous stone, but not reduced to powder or dust; comminuted stone in the form of loose grains, which are not coherent when wet.

In the New English Dictionary, "sand" is defined as—

> A material consisting of comminuted fragments and water-worn particles of rocks (mainly siliceous) finer than those of which gravel is composed.

As before stated, it is perfectly clear that this is not crude sand. Nor do we think it can be considered manufactured sand within the meaning of this paragraph. Undoubtedly sandstone, ground or crushed so as to separate the particles into loose grains, might be called manufactured sand. But something more than this is done to this material. It is not only crushed, but a process of separation of the various ingredients which go to make up the material of which it was originally composed occurs. By the testimony of witnesses as to conditions in the North Carolina mines, only one part in ten of the original material is recovered as corundum. This is not so much a process of manufacture of sand as of extraction of a material from a crude mass, and partakes more of the character of recovering a mineral than manufacturing sand within the ordinary meaning of that term.

The Circuit Court of Appeals had the identical question before it in which the same importer was a party, and the decision is reported in

the case of Myers v. United States (163 Fed. Rep., 53). It was said by the court:

Definitions of the word "sand" may be found sufficiently broad to include any mineral when reduced to fine particles. Other definitions limit the term to fine particles of stone, and in ordinary use it is confined to fine particles of siliceous stone, common sand consisting almost entirely of silica. The decision of this case, however, does not require us to accurately define the word "sand." We are rather called upon to say what it does not include, as used in the tariff act, than what it does include. Obviously the word as so employed does not include gold dust or any of the precious metals when reduced to fine particles. Almost equally clear is it that the baser metals—e. g., iron or zinc—when ground would not commercially be called sand; and we think it also follows that the term is inapplicable to any metalliferous mineral, although it be in comminuted fragments.

We fully agree with the conclusion of the Circuit Court of Appeals in the case cited, and hold that this importation is not sand, either crude or manufactured, within the meaning of the paragraph in question.

It remains to be determined whether it is to be considered as "minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture."

It is to be noted that this material is advanced from what is described by the importer's witness as conglomerate ore to a finished product worth 5 cents per pound. It is crushed and washed. It is in fact a finished product for the uses to which it is adapted, and we think it comes within the case of United States v. Graser-Rothe (164 Fed. Rep., 205), where this same section of the statute was construed, and it was held that the process of crushing waste marble and fitting it for use and giving it the name of granito or terrazzo constituted a manufacture, and that it was no longer crude mineral. The same question was presented to this court in Rossman v. United States (T. D. 31321), in which case we followed the holding in United States v. Graser-Rothe, supra, and held granito to be advanced in value by crushing, and it was there said:

In the case at bar the importation has been substantially increased in value. It has been subjected to labor and mechanical treatment which has largely contributed to its increased value. It has taken a new and distinctive name which does not appear to be related to the original product and is devoted to a use to which it seems waste marble has not formerly been applied. The statute applicable seems to imply that grinding or refining are within its meaning deemed to be a process of manufacture; otherwise no force can be given to the word "other" in the paragraph.

If grinding be a process of manufacture, we see no good reason for saying that crushing is not equally so. The operations are similar, the main difference being that in grinding the substance treated is more finely pulverized than is ordinarily understood to result from the crushing process. It is rather a difference of degree than otherwise.

It is true that the product of this process still retains the name of corundum. It perhaps might be more appropriately called corundum sand, as it is not corundum ore as it appears in nature. But

be that as it may, we can not conceive that the name by which the article is known should be held controlling in view of the language of this paragraph. To bring the mineral within the paragraph, it must be crude—that is, not advanced in value or condition by refining, grinding, or other process of manufacture. Clearly a process of manufacture so similar to grinding as is crushing should be held to be within the general language "other process of manufacture," used in this paragraph and in close relation to the word "grinding." It is quite different in its operation and results from the mere breaking of ore or ore-bearing rocks for the purpose of excluding from the mass barren rock and reducing the cost of transportation, as was the case in Cockerill Zinc Company *v.* United States (T. D. 27891). The present importation is completely manufactured and fitted for use.

The case is clearly distinguishable from Hartranft *v.* Wiegmann (121 U. S., 609). The language there construed by the Supreme Court was, "shells of every description not manufactured." It appeared that the shells had been prepared by cleaning off the outer layer by acid, then grinding off the second layer by an emery wheel, and that the object of these manipulations was for the purpose of ornamentation, and the shells were sold as ornaments. The court said:

The application of labor to an article either by hand or by mechanism does not make an article necessarily a manufactured article within the meaning of that term as used in the tariff laws.

and held that the importations were not manufactured; that they were still shells; and said:

They had not been manufactured into a new and different article having a distinctive name, character, or use from that of a shell.

But the language of the paragraph under consideration in this case is quite different from that there construed. "Advanced in value or condition by refining or grinding, or by other process of manufacture" is open to quite a different construction from that which can be given the bare word "manufactured."

The case *In re* Gardner (72 Fed. Rep., 492),cited by us in the Rossman case, *supra*, with approval, is instructive. The court there had under consideration a paragraph which provided that "bones, crude, or not burned, calcined, ground, steamed, or otherwise manufactured" should be entitled to free entry. It appeared in that case that the bones had been crushed and screened. The court held that the word "manufactured" seemed to be given a definition by the paragraph itself different from the definition in Hartranft *v.* Wiegmann, *supra*. So we think in the present case that the words "otherwise manufactured" should be read in connection with what precedes them in the same paragraph; and, so construed, we think they include such a process of manufacture as that here employed. An article quite different

from the crude ore is the result of this process, and we think the product can not be called a crude mineral within the meaning of paragraph 614.

It only remains to consider whether the importation is dutiable by similitude under paragraph 419 of the tariff act of 1897, which provides a duty of 1 cent per pound on "emery grains, and emery manufactured, ground, pulverized, or refined."

Corundum is different from emery only in that it is substantially free from any impurities. Emery ore is corundum ore, containing magnetic iron. Both ores when used in the arts are ground into fine particles and used for grinding. While corundum and emery are commercially distinct articles, they are both used for the same identical purpose. It is difficult to conceive of a case in which the application of the similitude clause would be more imperative.

The decision of the Board of General Appraisers, which held this article dutiable by similitude with emery, is *affirmed*.

SMITH, BARBER, DE VRIES, and MARTIN, Judges, concur.