HENDERSON & HALL *v.* UNITED STATES (No. 1096).[1]

MIXTURE OF QUARTZ, COKE, SALT, AND SAWDUST.

The merchandise here is made by combining approximately 60 parts of crushed quartz with 30 parts of coke, 1 part of salt, and 10 parts of sawdust. The term "manufactured sand," paragraph 683, tariff act of 1909, relates to material composed of common or crude sand, and can not be taken to include this merchandise.— Myers *v.* United States (1 Ct. Cust. Appls., 506; T. D. 31531).

United States Court of Customs Appeals, May 26, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7429 (T. D. 33189).

[Affirmed.]

*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellants.

*William L. Wemple,* Assistant Attorney General (*William A. Robertson,* special attorney, of counsel; *Frank L. Lawrence,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The provisions of law involved in this case are paragraphs 480 and 683 of the tariff act of 1909, which we quote:

480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

683. Stone and sand: Burrstone in blocks, rough or unmanufactured; cliff stone, unmanufactured; rotten stone, tripoli, and sand, crude or manufactured, not otherwise provided for in this section.

The merchandise involved consists of what is called fire sand and was assessed for duty under paragraph 480 as a nonenumerated manufactured article. The appellants claimed free entry of the article as a manufactured sand.

The product is made by combining approximately 60 parts of crushed quartz with 30 parts of coke, 1 part of salt, and 10 parts of sawdust. The materials are thoroughly mixed and subjected to heat in an electric furnace with a temperature of 1,600 to 1,800 degrees centigrade. The resulting material, which comes from the furnace

---

[1] Reported in T. D. 33523 (24 Treas. Dec., 980).

in lumps, is afterwards crushed to the finely comminuted state found in the importation, which consists mainly of fine grains that have commingled with them some coarser grains, which might perhaps more appropriately be termed manufactured gravel than manufactured sand if either classification were to be adopted. Its use is for lining the electrical and fuel-fired furnaces employed in foundry work for the melting of metals, for binding fire brick, and for other purposes where a form of sand is required which will stand a high degree of heat.

An analysis of the material shows the following constituents:

|                        | Per cent. |
|------------------------|-----------|
| Carbon (free)          | 4.63      |
| Carbon (combined)      | 21.48     |
| Silicon (total)        | 58.03     |
| Aluminum               | 4.21      |
| Iron                   | 1.52      |
| Calcium                | 1.22      |
| Oxygen (by difference) | 8.91      |
|                        | 100.00    |

Paragraph 683, containing the term "sand, manufactured," is a reproduction of paragraph 671 of the act of 1897 which had been construed, prior to the enactment of the act of 1909, in the case of Myers v. United States (155 Fed., 502), in which Judge Holt said:

> Crude sand is obviously common sand, as found in nature. It consists almost entirely of silica. I think the term "sand, manufactured," as used in the act, means a kind of sand which, although manufactured, is substantially the same as crude sand. I do not think, therefore, that pulverized corundum ore or corundum can be called "manufactured" sand in the sense in which that word is used in the act. The fact that it is technically covered by some of the definitions of sand in the dictionaries is in my opinion immaterial.

The case was taken to the Circuit Court of Appeals and decided in April, 1908. The court used this language:

> Definitions of the word "sand" may be found sufficiently broad to include any mineral when reduced to fine particles. Other definitions limit the term to fine particles of stone, and in ordinary use it is confined to fine particles of silicious stone, common sand consisting almost entirely of silica. The decision of this case, however, does not require us to accurately define the word "sand." We are rather called upon to say what it does not include, as used in the tariff act, than what it does include. Obviously the word as employed does not include gold dust or any of the precious metals when reduced to fine particles. Almost equally clear is it that the baser metals—e. g., iron or zinc—when ground would not commercially be called sand; and we think it also follows that the term is inapplicable to any metalliferous mineral, although it be in comminuted fragments.

The tariff act of 1909 was enacted with these decisions before Congress, and it must be assumed that the reenactment was an

adoption of the construction previously given by the courts to the language.

Another case was made up by the same importers and is reported in volume 1 of our reports, page 506, and in that case it was said:

It will be noted that the word "sand" is used in the same paragraph with "burrstone," "cliff stone," "rotten stone," and "tripoli," all of which are cheap materials and mainly composed of silicious rock.

There are many definitions of the word "sand" which would cover the importation in question. But it often is given a more restricted meaning. Citing Webster's Dictionary and the New English Dictionary.

It was further held that the importation there in question, corundum, could not be considered manufactured sand within the meaning of this paragraph. It was said:

Undoubtedly sandstone, ground or crushed so as to separate the particles into loose grains, might be called manufactured sand. But something more than this is done to this material. It is not only crushed, but a process of separation of the various ingredients which go to make up the material of which it was originally composed occurs.

In this case the process employed is not that of separation of parts from the main body of the rock or ore, but a process of addition or commingling of different materials. Coke certainly would not be regarded as sand, however finely it may be ground. Nor would salt or sawdust. These are commingled with crushed quartz, and by chemical reaction the article here in question is produced. That this is not the ordinary sand of the variety described in the opinions quoted and held to be the kind contemplated by the enactment in question is perfectly clear.

But it is said that a commercial meaning had been given to the word "sand" prior to the passage of the act of 1909. We think the evidence is weak in support of this contention, for the reason stated by the board. But more than this, we think, under the rule of *ejusdem generis*, the intention of the legislature to limit or restrict the sand entitled to free entry under the paragraph in question to common sand of like kind or material as that named in the paragraph is manifest and had, indeed, been ruled by the courts prior to the passage of the present act.

The testimony as to commercial designation does not show that this article is known by the name of sand alone, but by the compound name of fire sand or carborundum fire sand or Norton's fire sand. Assuming that such an article was known at the time of the enactment of the present law, we still think that the terms employed by the act "crude sand" and "manufactured sand," used in the connection in which they are, relate the term "manufactured sand" to material which ordinary common sand or crude sand would be

composed of, and that this legislative purpose is so definitely shown as to exclude an article described as above and not shown to have been known commonly by the term employed in the statute without prefix.

The decision of the Board of General Appraisers is *affirmed*.