(C. D. 293)

V. J. CRONIN v. UNITED STATES

United States Customs Court, Third Division

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Richard F. Weeks,* special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

KEEFE, Judge: This case involves several importations at Rochester of nepheline syenite, assessed for duty at 30 per centum ad valorem under paragraph 214, Tariff Act of 1930, as an earthy or mineral substance. The plaintiff relies upon the claim that the merchandise is entitled to free entry as sand, manufactured, under paragraph 1775.

An engineer in charge of research and development in the American Nepheline Corporation testified for the plaintiff that the nepheline syenite in question was imported in the form of a granular sand; that it had been crushed and ground from crude rock; that since 1937 it had been imported in the form of a crude rock but previous importations were in a granular condition; that nepheline syenite is in a massive rock formation and is quarried by drilling and blasting into large lumps which are redrilled and blasted again to reduce the size for convenience in handling; that the crude rock is fed into a jaw crusher, then further reduced by roller crushers and screened through a 20-mesh sieve. Thereafter it passes into a bin containing a magnetic separator and the loosely granular material is passed over the rollers of a magnetic separator which remove certain impurities of iron; that this material is used in the manufacture of glass by mixing with other materials of similar physical character before being fed into a glass-melting tank; that nepheline syenite is physically used in the same manner as glass sand and the only difference between the two products is that glass sand contains usually between 98 per centum and 100 per centum silica, while nepheline syenite consists of 60 per centum silica, 24 per centum alumina, 10 per centum sodium oxide, 5 per centum potassium oxide, and traces of other elements; that nepheline syenite is mixed with glass sand for the aluminum oxide content in order to produce a better quality glass and also for certain fluxing oxides as well as a small amount of silica contained therein. From his experience he had found that sand is produced from both natural and artificial means from rocks; that sand in his opinion was the result of the disintegration of rocks, either by nature or artifically and that a commodity produced by crushing rocks into the form of sand would be sold as sand.

The manager of the Ceramic Division of the Great Lakes Foundry Sand Co. testified for the plaintiff that he handles industrial sand of all kinds; that he has handled filter sand, molding sand, sandblasting sand, sand for sandpaper, and nepheline syenite; that nepheline syenite sand is used as a glass batch ingredient in the manufacture of glass; that nepheline syenite is used along with glass sand to supply some of the silica and also the desirable element of alumina; that nepheline syenite is used in the same way as glass sand but does not take its place because the aluminum content would make the glass batch too stiff to work. In the experience of the witness in handling sands he has found that many of the sands sold commercially as sand are produced by crushing rock; that if a sand is desired having a very high refractiveness a crushed product is usually required because it does not have any silt or impurities with it. In his opinion nepheline syenite is sand.

A professor of geology and mineralogy in the University of Rochester testified for the Government that in his opinion sand is an unconsolidated material consisting of loose grains, which are mineral particles, or small fragments of rocks which have resulted from weathering processes and finally producing a product of a given grain and size called sand; that smaller particles would be called mud, the larger ones gravel; that the process of disintegration is necessary for the formation or creation of sand, because sand is a geological substance which is formed through natural processes; that nepheline syenite does not occur in the form of sand naturally disintegrated and in his opinion it was not sand when artificially disintegrated, by crushing and grinding. However, the witness admitted that a commodity that would not be classed as a sand from a strictly geological standpoint might be treated as a sand for commercial purposes, and also that filter sand that had been crushed would still be sand. Witness further testified that sands result from the disintegration of various rocks, such as Gneiss, quartz, schist, granite, syenite, diorite, gabbro, rhyolite, or sandstone.

The plaintiff contends that nepheline syenite is a sand, resulting from the disintegration of rocks, and that the dictionary definition of sand is not limited to "natural" disintegration but is broad enough to include disintegration caused by any means, such as crushing and other manufacturing processes. It was further contended that at the time of the passage of the Tariff Act of 1930 Congress was aware of many decisions of this court holding that the terms "sand, manufactured" embraced sand produced by any process of manufacture, such as crushing rock, and that the terms had been construed to mean sand produced by a manufacturing process; and it was pointed out especially that in the case of *Maine Central Railway Co.*, T. D. 39190, certain molding sand containing 66.5 per centum silica, 18.6 per centum

alumina, 2.9 per centum magnesium oxide and small amounts of other elements, was held free of duty as sand, and that the sand here in question containing 60 per centum silica and 24 per centum alumina and small amounts of other elements would likewise be sand.

The Government contends that artificially crushed rock does not fall within the scientific definition of sand; that the term "crude sand" refers to common sand as found in nature, consisting almost entirely of silica and that "sand, manufactured" is a kind of sand, which, although manufactured, is substantially the same as crude sand; that manufactured sand relates to material having the composition of ordinary common sand, and an article not shown to have been commonly known by the term employed in the statute without prefix is not comprehended within the paragraph.

Paragraph 1775 of the Tariff Act of 1930 provides as follows:

PAR. 1775. Stone and sand: Burrstone in blocks, rough or unmanufactured; quartzite; traprock; rottenstone, tripoli, and sand, crude or manufactured; silica; cliff stone, freestone, granite, and sandstone, unmanufactured, and not suitable for use as monumental, paving, or building stone; all the foregoing not specially provided for.

The substance before us, nepheline syenite, is described in Webster's New International Dictionary as "a holocrystalline plutonic pale-colored rock consisting principally of nepheline and alkali feldspar." The Century Dictionary and Cyclopedia describes syenite as "a rock composed of feldspar and hornblende, with or without quartz,—a hornblende granite." Nepheline is described therein as "a mineral occurring in glassy white or yellowish hexagonal crystals or grains in volcanic rock and is composed of silicate of aluminum, sodium, and potassium." Sand is described in the same dictionary as follows:

Sand consists usually of the debris of crystalline rocks, and quartz very commonly predominates in it, since this mineral is very little liable to chemical change or decomposition * * * derived from the recent breaking up of granitic and other silicious rocks * * *

In the Dictionary of Tariff Information, 1924, on page 632, Sand, Crude or Manufactured, is described as follows:

Technically, any material when in grains up to one-fifth of an inch in diameter may be called a sand; when larger, the aggregate consists of gravel or pebbles. Industrially these terms refer to common quartz or quartzose material. Sand is used in construction work of all kinds and in abrasive materials; here the physical properties are of chief importance. Glass sand—namely, sand used for glass making—must have a very high silica content and be low in iron oxide.

The article also listed the varieties of sands imported, such as glass sand, molding sand, building sand, grinding and polishing sand, fire or furnace sand, engine sand, paving sand, filter sand, railroad ballast sand, and other sands.

There have been many decisions rendered by the courts relative to the definition of the terms "sand, crude" and "sand, manufactured." In *Myers* v. *United States*, 163 Fed. 53, the Circuit Court of Appeals had before it the question whether pulverized corundum ore was sand, manufactured. The corundum had been extracted by a process of manufacture and constituted only about one-tenth of the material from which it had been extracted. The court found the material to be a metalliferous mineral, and although the definitions of the word "sand" may have been broad enough to include any mineral when reduced to fine particles, the court was of the opinion that the term "sand" in ordinary usage is confined to fine particles of silicious stone, and would not include any metalliferous mineral even when in comminuted fragments. As corundum is an ore rather than a mere stone or rock it does not become a manufactured sand when ground.

In *Myers* v. *United States*, 1 Ct. Cust. Appls. 506, T. D: 31531, the same subject of corundum was before the court, and it was held that more had been done to the merchandise than crushing the same into a sand as there had been an extraction of the material from a crude mass.

In the case of *Henderson & Hall* v. *United States*, 4 Ct. Cust. Appls. 327, T. D. 33523, certain fire sand was claimed free of duty as a manufactured sand. The commodity was a combination of crushed quartz, coke, salt, and sawdust and had undergone chemical changes as the result of the application of intense heat to such mixture. In holding that the commodity was not free as sand, manufactured, the court stated that not every commodity having the structural appearance of sand may be classified as such, as it would lead to the classification of glass as sand were it not specifically provided for.

In *Dana's* case, G. A. 5079, T. D. 23521, furnace or open-hearth sand composed principally of silicate of alumina and small amounts of silicate of iron and magnesia was claimed to be sand. The merchandise was manufactured from silica stone into sand by a process of grinding and screening. The court held that it was immaterial whether it had been produced from some kind of stone by grinding or other like process, or whether it is in its natural state, inasmuch as said paragraph enumerates "sand, crude or manufactured."

In *Massce's* case, Abstract 36371 (T. D. 34742) ground geyserite, a variety of opaline silica deposited about the orifices of geysers in cauliflower-like forms, was held to be sand, manufactured.

In the case of *Central Railway Co.*, G. A. 8554, T. D. 39190, merchandise assessed as unwrought clay was claimed to be sand. The chemical analysis showed it to consist of 66.5 per centum silica, 18.6 per centum alumina and iron oxide, 2.9 per centum magnesium oxide, 4.48 per centum alkalies and 7.52 per centum ignition. In holding the merchandise to be sand the court stated that it would be drawing

the line a little too fine to say that a commodity which was 86.8 per centum sand should be classified as sand and one which was but 66.5 per centum should be classified under some other provision of the law.

In the case of *Tower*, G. A. 9003, T. D. 40914, in defining sand, manufactured, the court stated:

\* \* \* And we think *sand, manufactured,* means sand which has been manufactured out of sandstone or some other substance, and not sand which has been manufactured into what importer's counsel calls a "rock-like substance."

In the case of *Lane & Sons* v. *United States*, Abstract 28601, the court held that certain greenjohn, used as a surfacing of tennis courts, was rock, crushed and screened, rather than sand. No evidence was presented by the importers in that case as to the origin of the product or in what condition it was found prior to processing, and the weight of evidence was considered insufficient to warrant the court in reaching the conclusion that the merchandise consisted of sand, manufactured.

From a careful consideration of the evidence in this case and in view of the decisions cited it is clear that the term "sand, manufactured" comprehends a material manufactured into sand from crystalline rocks, but excludes materials in the form of sand which have been produced from metalliferous ores or products manufactured and subsequently ground into a sand-like material. The rock from which the substance before us was manufactured is of crystalline character and contains large percentages of silica. The rock, when ground into the form of sand, is used in the same manner as glass sand in the production of glass. Its purpose is the production of a finer quality of glass by reason of its aluminum oxide content. It is handled by dealers in sand and considered by them to be sand. We are of the opinion that the product is comprehended squarely within the provision in paragraph 1775, Tariff Act of 1930, for "sand, manufactured," and is more specifically provided for thereunder than as an earthy or mineral substance.

Judgement will therefore be entered in favor of the plaintiff, directing the collector to reliquidate the entries and to make refund accordingly.