(C. D. 550)

THERMAL SYNDICATE, LTD. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 7, 1941)

*Jordan & Klingaman* (*Edward F. Jordan* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Joseph F. Donohue,* special attorney), for the defendant.

Before CLINE and KEEFE, Judges

KEEFE, Judge: This is an action to recover duties exacted by the collector at New York on shipments of fused silica. Duty was assessed thereon at 30 per centum ad valorem under paragraph 214 of the Tariff Act of 1930. The plaintiff claims that the merchandise is entitled to entry free of duty under the *eo nomine* provision for silica in paragraph 1775.

The evidence produced by the plaintiff at the trial establishes that crude silica in the form of natural sand, having a purity of 99.8 per centum, after drying and screening, is placed in an electric furnace, a box-shaped receptacle having graphite electrodes passing through the center thereof. There the silica is subjected to about 3,500 degrees of heat and thereby forms a plastic solution of fused material around the graphite electrodes. The electrodes are withdrawn and the material is allowed to cool and solidify within the electric furnace. After removal it is broken up into small pieces and imported into the United States in such condition. During the fusing process there is no chemical reaction and nothing is removed from, nor anything added to, the natural crude silica. However, the intense heat changes the physical structure of silica from its natural crystalline form as found in sand to an amorphous form. Fused silica, having an amorphous physical structure is found in nature, having been changed from the crystalline state by some act of nature. The fused silica, as imported, is in small rock-like pieces. To utilize the same, it is necessary to subject it to a grinding or crushing process.

A sample of the silica in the form of sand, as taken from the mine, was admitted in evidence as exhibit 1–B. The processed silica as imported herein was represented by exhibit 1–A. Illustrative exhibits, consisting of a catalog depicting articles manufactured from fused silica, and certain articles so manufactured, were admitted in evidence as exhibits 1–C, D and E.

The Government admits that the merchandise is amorphous silica which has been fused by artificial means and, as imported, differs from the original silica sand only in that it has been changed from crystalline to amorphous silica and has taken the shape of lumps rather than sand, and is imported for manufacture into various articles required to have resistance to a high degree of heat.

The plaintiff contends that the provision for silica in paragraph 1775 includes silica in all forms except the crude, specially provided for in paragraph 207.

The Government, on the other hand, contends that under the law of construction of tariff provisions, the use of a colon, following the opening words of a paragraph, indicates the Congressional intent to restrict the provisions therein to such articles as are commonly included within the definitions of the words in such title, and that

articles *eo nomine* provided for in the paragraph are restricted to such as fall within the common acceptance of the meaning of the words in such title; therefore, the title to paragraph 1775, to wit, "Stone and sand:" describes the scope and extent to which the *eo nomine* provisions following the colon are intended to be used and, as such, affects every article in the paragraph, limiting the application of the specific designations therein to articles either in the form of stone or of sand.

The paragraphs of the Tariff Act of 1930 under consideration provide as follows:

PAR. 214. Earthy or mineral substances wholly or partly manufactured and articles, wares, and materials (crude or advanced in condition), composed wholly or in chief value of earthy or mineral substances, not specially provided for, whether susceptible of decoration or not, if not decorated in any manner, 30 per centum ad valorem; if decorated, 40 per centum ad valorem.

PAR. 1775. Stone and sand: Burrstone in blocks, rough or unmanufactured; quartzite; traprock; rottenstone, tripoli, and sand, crude or manufactured; silica; cliff stone, freestone, granite, and sandstone, unmanufactured, and not suitable for use as monumental, paving, or building stone; all the foregoing not specially provided for.

Inasmuch as silica is provided for in paragraph 1775 by name without limitation as to form or condition, the first question before us for decision is whether or not the title of paragraph 1775, *supra,* was intended by Congress to limit the application of such paragraph to articles when imported in the form of stone or of sand, under the rule of law relied upon by the Government.

A careful examination of many decisions of this and higher tribunals is convincing that such rule is not without its exceptions.

In the case of *Crimmins & Pierce* v. *United States*, 6 Ct. Cust. Appls. 137, T. D. 35392, the court stated that the title of an act or of a paragraph *does not control* the legislation embraced therewithin. But in cases of doubt it is an accepted source of information and can always be looked to as one of the guides to the legislative purpose.

In *Hollender* v. *Magone*, 149 U. S. 586, the Supreme Court stated that all that was intended by titles was a general suggestion as to the character of the articles and not any technically accurate definition of them.

In *United States* v. *American Shipping Co.*, 13 Ct. Cust. Appls. 346, T. D. 41254, where the court considered the paragraph title "Perfume materials," the court stated:

* * * While the words "Perfume materials" under certain circumstances might not be controlling as to the classification of articles within the paragraph, *there is no circumstance leading to the conclusion that Congress did not intend them to be controlling. In the absence of anything showing the contrary it is certainly strongly indicative of the legislative intent.* [Italics not quoted.]

In the case of *Universal Mercantile Co.* v. *United States*, 18 C. C. P. A. 441, T. D. 44698, the court found that Congress expressed a contrary

legislative intent of restricting the title of schedule 8 of the Tariff Act of 1930 to "Spirits, Wines, and Other Beverages." There the importers contended that paragraph 802 under such schedule was limited to such articles that come within the class of beverages. Consequently the collector's assessment of duty upon Amargo and Orruro bitters which contained one dose of cascara to each fluid ounce of bitters was erroneous because such bitters were not suitable for use as a beverage and therefore excluded from the paragraph.

The court was of the opinion that the provision for "bitters of all kinds" containing spirits was intended to cover all bitters containing spirits, whether used as beverages or as medicinal preparations. As to the weight to be accorded to the title of the schedule the court stated:

The title of a schedule or of a paragraph in a tariff act may, in some instances, be strongly indicative of a legislative purpose to limit such schedule or paragraph to articles of a particular class. However, where the Congress has indicated a contrary purpose, as it has in paragraph 802, the title of the schedule or of the paragraph should not be given controlling effect. The purpose of rules and principles of statutory construction is to ascertain, if possible, the legislative intent. * * *

From the foregoing authorities it is clear that the title to a paragraph does not necessarily control or limit the scope of articles to which *eo nomine* provisions therein may be applied. The title is indicative of the character of the articles but technical precision in defining the same is not adhered to, and the paragraph itself, according to the articles included therein, is ofttimes indicative of the extent to which Congress intended the title of the paragraph to apply.

It is interesting to note from an examination of the definitions of various lexicographers of the articles provided for by name in paragraph 1775 that substantial quantities of silica are reported to be present in the various substances and that silica itself is found in rocks and also in the form of sand. The merchandise before us here is in the form of a broken stone or rock. It was not contradicted that silica is found in its fused state in nature and is not limited to sand form. Paragraph 1775, therefore, provides largely for siliceous rocks or stone and sand which is largely silica. Silica sand was held free of duty as sand in the *Dana* case, G. A. 5079 (T. D. 23521); again powdered silica was held to be free of duty as sand in *Massce's* case, Abstract 29546 (T. D. 32767). Although held free of duty as sand even when powdered, Congress provided for silica *eo nomine* in the Tariff Act of 1930 in the "Stone and sand" paragraph, indicating its intention to include in such paragraph silica in other forms than sand. Inasmuch as silica is found in nature in only two forms, largely as sand and occasionally as stone, it must have been contemplated to include in the "Stone and sand" paragraph silica in any condition not

otherwise specially provided for. This conclusion gains in force upon a consideration of the history of this paragraph of the law. Before the act of 1890 provision was made for certain articles under the tariff title "Stone." In the Tariff Act of October 1, 1890, Congress included "sand, crude or manufactured" in this paragraph and changed the title of the paragraph to "Stone and sand." Provision was also made for burrstone and cliff stone in an unmanufactured condition and for pumice stone (later removed therefrom) and rottenstone. In the Tariff Act of 1897 "tripoli" was added to this paragraph. In the Tariff Act of 1913 Congress included freestone, granite, sandstone, and the free entry of such articles, including cliff stone, previously provided for, was limited to such as were "not suitable for use as monumental or building stone." In the Tariff Act of 1922 the provisions were again enlarged so as to include quartzite and traprock and the Tariff Act of 1930 again extended so as to include a provision for silica.

In the *Dana* case, *supra*, the court stated that it was immaterial whether sand had been produced from some kind of stone by grinding or other like process, or whether it was in its natural state.

In the case of *Henderson* v. *United States*, 4 Ct. Cust. Appls. 327, T. D. 33523, where certain ingredients including charcoal were manufactured into an article claimed to be sand, the court stated that the term sand, manufactured, was intended by Congress to be limited or restricted to common sand of like kind or material as that named in the paragraph. In *Tower* v. *United States*, G. A. 9003 (T. D. 40914), fused sand claimed free as sand manufactured and imported in chunks was held excluded from the paragraph because *sand, manufactured*, according to the court, meant sand which had been manufactured out of sandstone or some other substance and did not include a rocklike substance manufactured from sand. Ground geyserite was held free of duty as sand, manufactured, in the *Massce* case, Abstract 36371 (T. D. 34742). An article reported as having the composition and properties of clay but which contained 66.50 per centum of silica was held free of duty as sand in *Maine Central Railway Co.* v. *United States*, G. A. 8554 (T. D. 39190). There the specific provision for sand in the sand paragraph was held to include articles, not sand, if in the condition of sand or composed of the same materials as sand, although including a powder or a clay if it possessed the attributes of sand.

In the *Rhodes* case, Abstract 42319 (old series) certain rottenstone which had been put through a process of sieving and cleansing, thereafter moistened and manufactured into the form of a brick, nothing having been added to the stone, was held free of duty as rottenstone, even though it was not in the form of a stone.

In the *Fossil Flour Co.* case, T. D. 19980, G. A. 4245, a substance found to be a refined or wrought earth was held by the court to be "tripoli" specifically provided for in the "Stone and sand" paragraph. Tripoli was therein defined as a fine powder derived from friable homogenous rocks. The article specifically provided for was neither a stone nor a sand, although it was derived from a certain class of stone.

At the time of the passage of the Tariff Act of 1930, Congress is presumed to have been well aware of the judicial rulings relative to the articles comprehended within the "Stone and sand" paragraph, and is presumed to have known that such paragraph was held to properly include within the *eo nomine* provisions therein, if not otherwise specially provided for, any article which had been derived from either stone or sand, even though it be an earth. Therefore in providing for silica by name, without words of limitation or description, it must be presumed that Congress intended to include all silica not otherwise provided for even though such silica had been manufactured into a rock-like substance such as we have before us in this case.

In view of the legislative history of correlative paragraphs of former tariff acts and the decisions heretofore cited, we are of the opinion that Congress had no intention of limiting the *eo nomine* provisions in the "Stone and sand" paragraph to articles either in the form of stone or of sand.

Therefore judgment will be entered in favor of the plaintiff directing the collector to reliquidate the entries and make refund of all duties taken.