### RUSSELL v. WILLIAMS.

1. Section 21 of the act of July 14, 1870, c. 255, which provided that, in lieu of the duties then imposed by law, certain duties specified should thereafter be imposed on certain enumerated articles, did not repeal, as to such articles, sect. 6 of the act of March 3, 1865, c. 80, which declared that there should be thereafter paid on all goods the growth or produce of countries east of the Cape of Good Hope, when imported from countries west of that Cape, a duty of ten per cent *ad valorem* in addition to the duties imposed thereon when imported directly from the place of their growth or production.
2. The latter provision is a general commercial regulation, made to encourage direct importation from countries east of the Cape, as well as to benefit American shipping, and is applicable without regard to the regular duties imposed for purposes of revenue, and even where the articles are otherwise entirely free of duty.

ERROR to the Circuit Court of the United States for the District of Massachusetts.

The case is stated in the opinion of the court.

*The Solicitor-General* for the plaintiff in error.

*Mr. Charles Levi Woodbury* for the defendants in error.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is an action brought for the recovery of duties alleged to have been illegally imposed.

The following is the agreed statement of facts, so far as necessary to understand the case.

Williams & Hall, in February and April, 1871, imported into the port of Boston from Liverpool nine hundred and eighty-eight packages of tea, the product of China, and entered the same in warehouse under bond. At various subsequent dates they withdrew the tea for consumption. Russell, the collector of customs, assessed, and they paid him, duties thereon at the rate of fifteen cents per pound, and in addition a duty of ten per cent *ad valorem*, paying the latter amount under protest. The defendant assessed and exacted the duty of fifteen cents per pound under the provisions of sect. 21 of the act of July 14, 1870, c. 255, which provides that after the thirty-first day of December, 1870, in lieu of the duties now imposed by law on the articles thereinafter enumerated or provided for imported from foreign countries, there shall be levied, collected, and paid the following duties and rates of duties, that is to say, on teas of all kinds, fifteen cents per pound. Russell assessed and exacted the additional duty of ten per cent *ad valorem* under the provision of sect. 6 of the act of March 3, 1865, c. 80, which provides that "there shall be hereafter collected and paid on all goods, wares, and merchandise of the growth or produce of countries [east] of the Cape of Good Hope (except raw cotton and raw silk as reeled from the cocoon, or not further advanced than tram, thrown, or organzine) when imported from places west of the Cape of Good Hope, a duty of ten per cent *ad valorem* in addition to the duties imposed on any such articles when imported directly from the place or places of their growth or production."

The Circuit Court gave judgment against Russell, and he brought this writ of error.

The sole question is, whether the additional duty of ten per cent *ad valorem* was or was not lawfully exacted; and this depends on the question whether the provision of the act of 1865, for the payment of ten per cent on goods produced in countries east of the Cape of Good Hope when imported from places west of the Cape, was a general commercial regulation for the encouragement of direct trade with

those countries, as well as for the benefit of American shipping, or whether it was intended simply as an increase of duties for purposes of revenue. If the former, it would be independent of the duties imposed on the articles, and would not be repealed by a modification of them; if the latter, the result might be different. We are of opinion that it was intended as a general regulation of commerce. The object of the law was to favor direct importation from countries east of the Cape, without regard to the amount of duties imposed on the articles imported. These might be more, or might be less, or might be nothing; yet, the ten per cent *ad valorem* was to be paid if the articles were imported from places west of the Cape. This would incidentally benefit our own shipping, as that principally employed in the direct trade; whereas importation of the same goods to European ports, and thence to this country, would generally be made in foreign vessels.

The law in various forms has been in existence since 1861. The successive enactments were as follows: —

" That all articles, goods, wares, and merchandise imported from beyond the Cape of Good Hope in foreign vessels, not entitled by reciprocal treaties to be exempt from discriminating duties, tonnage, and other charges, and all other articles, goods, wares, and merchandise not imported direct from the place of their growth or production, or in foreign vessels, entitled by reciprocal treaties to be exempt from discriminating duties, tonnage, and other charges, shall be subject to pay, in addition to the duties imposed by this act, ten per centum *ad valorem: Provided*, that this rule shall not apply to goods, wares, and merchandise imported from beyond the Cape of Good Hope in American vessels." Sect. 3 of the act of Aug. 5, 1861, c. 45.

" That, from and after the day and year aforesaid, there shall be levied, collected, and paid on all goods, wares, and merchandise of the growth or produce of countries beyond the Cape of Good Hope, when imported from places this side of the Cape of Good Hope, a duty of ten per cent. *ad valorem*, and in addition to the duties imposed on any such articles when imported directly from the place or places of their growth or production." Sect. 14 of the act of July 14, 1862, c. 163.

Section 2 of the act of March 3, 1863, c. 77, simply exempted from the operation of the law cotton and raw silk as reeled from the cocoon.

The eighteenth section of the act of June 30, 1864, c. 171, repealed and re-enacted the Cape law of 1862, only changing the words "beyond the Cape" to "east of the Cape," and the words "this side" to "west."

Section 6 of the act of March 3, 1865, c. 80, which is the law now under consideration, is set out in the statement of facts. It remained in force until supplied by the third section of the tariff act of 1872, which was couched in the same terms (only adding wool to the excepted articles), and is still in force.

It will be observed that the first of these laws, which was enacted in 1861, imposed the additional ten per cent *ad valorem* on goods imported in foreign vessels from beyond the Cape, unless they were exempt from discriminating duties by reciprocal treaty, and goods imported in American ships were *ex industria* exempted from the burden. But it is obvious that this law would have failed to reach the object intended, since it would have been a dead letter in all cases where we had reciprocal treaties with other nations placing their ships on an equality with our own. The next enactment, therefore, left out the reference to foreign ships and adopted the regulation in the form which has ever since been substantially followed. It imposed the additional ten per cent *ad valorem* on the products of countries beyond, or east of, the Cape of Good Hope, when imported from places this side, or west of, the Cape. By this means the direct trade was distinctly favored, and, without expressly making any discrimination between domestic and foreign vessels, the desired encouragement in favor of the former was substantially attained.

It will also be observed that the provision was successively renewed in the different customs laws without regard to the modifications made in the duties themselves, or the changes made in the free list.

It was very early contended by importers that the law was not intended to affect goods which were on the free list, and exempt from any duty, — a position somewhat plausible from the words of the law, which were these: "A duty of ten per cent

*ad valorem* in addition to the duties now imposed on any such articles." It was argued that the ten per cent could not be said to be " *in addition* to the duties now imposed," where no duties were imposed. But such a construction would evidently have defeated the purpose of the law; and, accordingly, it was decided by this court in *Hadden* v. *The Collector*, 5 Wall. 107, that the act of 1862 (which was then under consideration) applied to goods which at the date of the act were duty free, as well as to those which were subject to duty. Reliance was placed in that case, it is true, on the literal phraseology of the law; but the judgment of the court was in conformity with the clear intent of the legislature, as we have supposed it to be.

The same conclusion was come to in the case of *Sturges* v. *The Collector*, 12 id. 19, in expounding the act of 1865, the one now before us. The court, speaking through Mr. Justice Clifford, referred to the evident purpose of Congress, not only to augment the revenue, but to make a discrimination " in favor of the direct trade." pp. 26, 27.

In conformity with the principle of these decisions, we are of opinion that the law in question continues in force in reference to all goods not expressly exempted from its provisions, whether dutiable or free, and whether new duties imposed are declared to be in lieu of all other duties, or not. Such a declaration is a mere formula to indicate that the duties newly imposed are to take the place of and supersede the previous duties specially imposed in the tariff schedules, and not to abrogate any general commercial regulations not expressly mentioned. The duties on tea have been several times changed since 1861; but, in our view, these changes had exclusive reference to the ordinary duties imposed for the purposes of revenue only, and not to the standing regulation which we are considering. In 1861, the regular duty on tea was fixed at fifteen cents per pound; in 1864, at twenty-five cents; in 1870, at fifteen cents; and in 1872 it was placed with coffee on the free list. In 1861, 1864, and 1870, the duty was fixed in the general tariff laws of those years respectively; the first two of which also contained the Cape clause discriminating in favor of direct importation. The tariff act of 1870 did not re-enact this clause,

but neither was it repealed; it remained in force as enacted in 1865 until re-enacted in the general tariff act of 1872. We do not think that it was necessary to re-enact it in 1870 in order to make it operative upon those imports within its scope, the duties on which were revised by that act. The object of that revision was to readjust the regular schedule of duties, not to interfere with the Cape rule as a regulation of commerce, or any other general regulation not expressly mentioned or referred to in the act, and not repugnant to its provisions. Both laws could stand together without repugnancy. The Cape rule contained in the act of 1865 could only be regarded as repealed by implication, if repealed at all; and, considering the object and purpose of the rule, such an implication was not necessarily involved in the act of 1870, and therefore will not be inferred.

It is urged, however, that *Gautier* v. *Arthur*, 104 U. S. 345, decides adversely to the view now expressed. But an examination of that case will show that the principle of construction which we have suggested was approved in the opinion of the court. That was the case of plumbago imported in a French vessel direct from Ceylon in 1873. The act of June 6, 1872, had exempted plumbago from all duty; but the seventeenth section of the act of 1864 had imposed a discriminating duty of ten per cent *ad valorem*, in addition to the duties imposed by law on all goods imported in foreign vessels, except where by treaty such vessels were entitled to the same privileges as American vessels. The court intimated that if the act of 1872 had done nothing more than to exempt the article from duty, the act of 1864 would still be operative. The court, in its opinion, says: "A construction of the section, in harmony with this view, is not an unreasonable one. In our judgment it best carries out the purposes of the act imposing a discrimination; and it conforms to the construction which this court, in *Hadden* v. *The Collector*, reported in the 5th of Wallace, gave to the succeeding section of the same act." The opinion then goes on to notice that the act of 1872 does contain something more; that the general repealing clause repeals all acts and parts of acts inconsistent with its provisions, excepting certain other acts, among which the discriminating section of the act of 1864 is not mentioned; and the opinion adds: "Both from

the general language of the repealing clause, and the enumeration of the provisions of acts excepted from it, we are forced to conclude that it was the intention of Congress to put an end, so far as the free l'st in the fifth section of the act of 1872 is concerned, to the operation of the discriminating act of 1864." It is only necessary to observe that the act of July 14, 1870, c. 255, on which the defendants in error rely in respect to the duty on teas, contained no such repealing clause. We do not see, therefore, that *Gautier* v. *Arthur* contravenes the conclusion to which we have come.

*Judgment reversed, and cause remanded with directions to award a new trial.*