UNITED STATES *v.* HOGAN (No. 2281). UNITED STATES *v.* BARHAM (No. 2283).[1]

1. CONSTRUCTION.

Repeals by implication are not favored.

2. CONSTRUCTION.

General provisions in an amendatory act are not construed ordinarily as affecting specific provisions of the amended act within the same subject matter.

3. CONSTRUCTION, TARIFF ACT OF 1921.

The emergency tariff act of 1921 did not have the effect of repealing or superseding the tariff act of 1913 in toto, but merely amended it in certain expressed particulars only, leaving all other provisions to continue in full force and effect.—United States *v.* Davies Co. (11 Ct. Cust. Appls. 392; T. D. 39317).

4. CONSTRUCTION—PARAGRAPHS 422, TARIFF ACT OF 1913, AND 19, TARIFF ACT OF 1921.—CAMELS'-HAIR PRESS CLOTHS.

Paragraph 422, tariff act of 1913, granted free entry to certain carefully described camel's-hair press cloths for oil milling. Paragraph 19, emergency tariff act of 1921, levied duty on camel's-hair manufactures "in addition to the rates of duty imposed thereon by existing law." Paragraph 19 (1921) can not be construed to have repealed paragraph 422 (1913) and taken away the free entry granted by it.

United States Court of Customs Appeals, February 25, 1924.

APPEALS from Board of United States General Appraisers, G. A. 8621 (T. D. 39527) and Abstract 45781, respectively.

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

*Ely Neumann* in 2281 and *Frank L. Lawrence* in 2283 for appellees.

[Oral argument October 22, 1923, by Mr. Charles D. Lawrence in 2281 and 2283 and Mr. Ely Neumann in 2281.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, and BLAND, Associate Judges; HATFIELD, Associate Judge, participating in the decision by agreement of counsel.

MARTIN, Presiding Judge, delivered the opinion of the court:

The merchandise now in question was entered in the months of August, 1921, and January, 1922. It consisted of so-called press cloth composed of camel's hair, imported expressly for oil milling purposes, and marked so as to indicate that it was for that purpose. The cloth was cut into lengths not exceeding 72 inches and woven in widths not under 10 inches nor over 15 inches, and weighed not less than one-half pound per square foot.

The collector held that it was dutiable as a manufacture of camel's hair under paragraph 19 of the emergency tariff act of May 27, 1921, and accordingly assessed it with duty at the rate of 45 cents per pound. The importers protested, claiming that the merchandise

---

[1] T. D. 40048.

was not governed by paragraph 19 of the emergency tariff act, but was entitled to free entry under paragraph 422 of the tariff act of 1913.

The Board of General Appraisers sustained the protest, and the Government appealed from the decision.

The tariff act of 1913 laid a duty of 35 per cent ad valorem upon all manufactures of camel's hair not specially provided for in the act. It also contained two specific provisions relating to press cloth composed of camel's hair, reading as follows:

(Dutiable list.)

288. * * * press cloth composed of camel's hair not specially provided for in this section, 10 per centum ad valorem.

(Free list.)

422. * * * Press cloths composed of camel's hair, imported expressly for oil milling purposes, and marked so as to indicate that it is for such purposes, and cut into lengths not to exceed seventy-two inches and woven in widths not under ten inches nor to exceed fifteen inches and weighing not less than one-half pound per square foot.

It is conceded that the merchandise now in question answered exactly to the terms of paragraph 422, supra, and that it would be entitled to free entry if that paragraph is controlling in the present case.

Upon the other hand, the emergency tariff act of 1921 contained two paragraphs, to wit, 18 and 19, which relate to this question. The first of these imposed certain graduated rates of duty upon camel's hair, if unwashed, washed, or scoured. The second paragraph, under which the present assessment was made, imposed duty upon manufactures of camel's hair in the following terms, to wit:

19. * * * manufactures of which wool or hair of the kind provided for in paragraph 18 is the component material of chief value, 45 cents per pound in addition to the rates of duty imposed thereon by existing law.

It will be noted that the foregoing provision imposed duty upon manufactures of camel's hair in general at the rate of 45 cents per pound in addition to the rates of duty imposed thereon by existing law. At that time, however, the existing law actually imposed no rate of duty whatever upon this particular manufacture of camel's hair, for, as already stated, it had been granted free entry under paragraph 422 of the former act. The collector, however, assessed it with duty at the rate of 45 cents per pound only, under the emergency paragraph aforesaid. The importers contend that the emergency act did not have the effect of repealing paragraph 422 of the act of 1913, and that this merchandise continued to be entitled to free entry under it. The board accepted this view and sustained the protest, and we think that its decision was correct.

It should be noted that the emergency tariff act of 1921 did not have the effect of repealing or superseding the tariff act of 1913 in toto, but merely amended it in certain expressed particulars only,

leaving all other provisions thereof to continue in full force and effect.—United States *v.* Davies Co. (11 Ct. Cust. Appls. 392; T. D. 39317). We think that paragraph 422 of the former act was one of those which were not amended by the emergency act. The latter act dealt with manufactures of camel's hair in general, which enumeration was already dutiable under the act of 1913, and imposed duty thereon at a certain rate in addition to the rate of duty then imposed upon it by existing law. This provision no doubt had the effect of amending the general dutiable provisions of the former act, including those relating to press cloth in general, and added a duty of 45 cents per pound to the rates of duty imposed upon such merchandise by the act of 1913. But it did not have the effect of repealing the specific exemption from duty which Congress had granted to the particular kind of camel's hair press cloth described in paragraph 422. This conclusion is sustained by various considerations, one of which is that repeals by implication are not favored, and another is that general provisions in an amendatory act are not construed ordinarily as affecting specific provisions of the amended act within the same subject matter.

> It is a general rule, in the construction of revenue statutes, that specific provisions for duties on a particular article are not repealed or affected by the general words of a subsequent statute, although the language is sufficiently broad to cover the article first mentioned.—Movius *v.* Arthur (95 U. S. 146).

Furthermore, the peculiar phraseology of paragraph 19 favors this construction. It imposed a certain rate of duty upon the described merchandise "in addition to the rates of duty imposed thereon by existing law." The natural import of this language was to impose a cumulative rate of duty upon articles which were already dutiable by law, for they were the only ones which could be subjected to rates of duty in addition to the rates then imposed upon them by existing laws. The word "additional" signifies "the joining together of several things into one amount." (Oxford Dictionary.)

The Government cites certain decisions of the Supreme Court as authority for its contention, but we think that these may be clearly distinguished from the present case. They are Hadden *v.* the Collector (72 U. S. 107); Sturges *v.* the Collector (79 U. S. 19); Gautier *v.* Arthur (104 U. S. 345); and Russell *v.* Williams (106 U. S. 623). These cases called for an interpretation of a law enacted by Congress on July 14, 1862, and afterwards repeatedly reenacted, the pertinent provision whereof as amended was as follows:

> That there shall be hereafter collected and paid on all goods, wares, and merchandise of the growth or produce of countries [east] of the Cape of Good Hope (except raw cotton and raw silk as reeled from the cocoon, or not further advanced than tram, thrown, or organzine), when imported from places west of the Cape of Good Hope, a duty of ten per centum ad valorem, in addition to the duties imposed on any such article when imported directly from the place or places of their growth or production.

It must be conceded that the phraseology of this enactment is similar to that now in question. Under it, however, the Supreme Court held that goods which were then free of duty when imported into this country directly from the country of their production east of the Cape of Good Hope became dutiable at the rate of 10 per cent ad valorem when imported from a port west of the cape, notwithstanding the use in the law of the clause, "in addition to the duties imposed on any such article when imported directly from the place or places of their growth or production." The Government contends that this ruling covers the present case. We may say briefly, however, that the foregoing decisions were chiefly based upon the manifest purpose of Congress that the imposition in question should serve as a discriminating duty for the encouragement of direct trade between this country and the countries east of the Cape of Good Hope for the benefit of American shipping, which purpose naturally contemplated dutiable and nondutiable goods alike, and would have been defeated pro tanto by the adoption of the opposite construction; furthermore, the inclusion of an express exception of certain goods within the body of the enactment was construed to prohibit the allowance of any other exception thereto under the rule expressio unius est exclusio alterius; and, moreover, the emphatic reference in the premises of the act to "all" articles, etc., tended also to sustain the conclusion reached therein by the court. The decisions therefore were not based so much upon the language common to the two enactments as upon rules of construction aliunde. In the case now at bar the considerations which aid in the construction of the controlling paragraph tend to sustain the claim for free entry, for there is no reason to believe that Congress intended in the emergency act to depart from its policy of favoring this particular kind of press cloth, to which it had specifically granted free entry in the act of 1913. It may well be assumed that if such had been the legislative purpose it would have been expressed in some more definite form than appears in the emergency act.

The judgment of the board is therefore *affirmed*.

BARBER, Judge, dissents.