UNITED STATES *v.* RICE & FIELDING, INC. (No. 2520)[1]

1. CONSTRUCTION, PARAGRAPHS 18 AND 19, EMERGENCY TARIFF ACT OF 1921—CAMEL'S HAIR.

Paragraph 18, emergency tariff act of 1921, levied duty upon certain wool and hair. Paragraph 19 taxed such wool and hair advanced, "in addition to the rates of duty imposed thereon by existing law." The quoted language does not restrict the operation of paragraph 19 to such merchandise as was dutiable under the tariff act of 1913, notwithstanding anything to the contrary in *United States* v. *Hogan,* 12 Ct. Cust. Appls. 121, T. D. 40048. Congress intended to include within the paragraphs unwashed, washed, sorted, and scoured camel's hair and such hair when advanced in any manner beyond the scoured condition, whether or not a separate tariff entity, and whether dutiable or free of duty under the tariff act of 1913.

2. CAMEL'S-HAIR NOILS ARE CAMEL'S HAIR ADVANCED.

Scoured camel's hair is combed for the purpose of segregating the long hairs, which are then known as "tops." The remaining waste, consisting of the short hairs, is known as "noils." The noils are camel's hair advanced within the meaning of that provision of paragraph 19, emergency tariff act of 1921, and were so dutiable. Notwithstanding that they may also be within the provision for "all noils," in free list paragraph 651, tariff act of 1913, they were not so classifiable.

United States Court of Customs Appeals, June 15, 1925

APPEAL from Board of United States General Appraisers, G. A. 8909 (T. D. 40566)

[Reversed and remanded.]

*William W. Hoppin,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

*Waterhouse & Lockett* (*William E. Waterhouse* of counsel) for appellee.

---

[1] T. D. 40979.

[Oral argument May 19 and 20, 1925, by Mr. Lawrence and Mr. Lockett]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of camel's-hair noils. It was assessed for duty by the collector at 45 cents per pound under paragraph 18 of the emergency tariff act of 1921. The importer protested the collector's classification and assessment. The Board of General Appraisers sustained the protest and the Government has appealed from the judgment entered below.

It is contended by the appellant that this case is controlled by the decision of this court in the case of *United States* v. *Rice & Fielding, Inc.*, 12 Ct. Cust. Appls. 78, T. D. 40020, in which case this court, upon the record then before it, held that camel's-hair noils were dutiable under paragraph 19 of the emergency tariff act of 1921, as camel's hair advanced in any manner beyond the washed or scoured condition.

The appellee contends that the decision of this court in the case of *United States* v. *Rice & Fielding, supra,* was based upon a wrong interpretation of the facts in that case, and, for the purpose of fully explaining the commercial status of camel's-hair noils, a record has been made up consisting of the evidence in the former case, together with additional testimony to the effect that camel's-hair noils must be carded, which was the first process to which scoured camel's hair was subjected in its development into "tops" and noils, as the first operation in the development of noils into yarn. The purpose of this additional testimony was to show that camel's-hair noils are not camel's hair advanced in any manner or by any process of manufacture beyond the washed or scoured condition of such hair.

It is claimed that, since scoured camel's hair must be carded and combed in order to produce "tops," and, as the noils must be subjected to the carding process as the first operation in their development into yarn, they are no further advanced than scoured camel's hair; that the carding and combing processes to which the hair of the camel is subjected in order to obtain "tops" has no effect whatever on the noils other than to separate them from the long fibers or "tops"; that camel's-hair noils are specifically provided for in paragraph 651 of the tariff act of 1913, as noils, and have been considered by Congress in successive tariff acts since the act of 1890, as a distinct tariff entity, and, therefore, were not intended by Congress to be included within the provisions of paragraph 19 of the emergency tariff act of 1921, for camel's hair "advanced in any manner or by any process of manufacture beyond the washed or scoured condition."

The case has been carefully and exhaustively considered and presented by counsel, many arguments and theories are advanced, and

many cases are cited, and, while the court has carefully considered all of the suggestions and arguments presented by counsel and has read with care all of the cases cited, we think it would unnecessarily lengthen this opinion to present our views on all propositions advanced for our consideration.

Paragraphs 18 and 19 of the emergency tariff act of May 22, 1921 read as follows:

PAR. 18. Wool, commonly known as clothing wool, including hair of the camel, Angora goat, and alpaca, but not such wools as are commonly known as carpet wools: Unwashed, 15 cents per pound; washed, 30 cents per pound; scoured, 45 cents per pound. Unwashed wools shall be considered such as shall have been shorn from the animal without any cleaning; washed wools shall be considered such as have been washed with water only on the animal's back or on the skin; wools washed in any other manner than on the animal's back or on the skin shall be considered as scoured wool. On wool and hair provided for in this paragraph, which is sorted or increased in value by the rejection of any part of the original fleece, the duty shall be twice the duty to which it would otherwise be subject, but not more than 45 cents per pound.

PAR. 19. Wool and hair of the kind provided for in paragraph 18, when advanced in any manner or by any process of manufacture beyond the washed or scoured condition, and manufactures of which wool or hair of the kind provided for in paragraph 18 is the component material of chief value, 45 cents per pound in addition to the rates of duty imposed thereon by existing law.

Paragraph 651 of the tariff act of 1913 reads as follows:

PAR. 651. Wool waste: All noils, top waste, card waste, slubbing waste, roving waste, ring waste, yarn waste, bur waste, thread waste, garnetted waste, shoddies, mungo, flocks, wool extract, carbonized wool, carbonized noils, and all other wastes not specially provided for in this section.

In the case of *Crimmins & Pierce et al.* v. *United States*, 6 Ct. Cust. Appls. 137, T. D. 35392, this court had under consideration the question whether "mohair noils" were included in the provision of paragraph 651, supra, for "all noils," and it was there held that the provision for "all noils" in paragraph 651, supra, included the hair of the Angora goat. Many dictionary definitions of wool were quoted in the court's decision, and, with reference thereto, the court said:

Aside from the force of the above correlated definitions, which uniformly, when read together, speak of the wool of "other like animals" and at the same time enumerate and classify as one of the "like animals" to the wool-producing sheep the Angora goat, the inquiry what is meant by "other *like* animals" is not difficult of conception when taken in connection with the purpose of the paragraph. That purpose is, of course, to include within the paragraphs and at the rates of duty therein prescribed all similar materials. The schedule is a classification and enumeration of materials and not animals.

"Like" animals, therefore, does not refer to physical construction or appearance of the animal itself, but to the fleece produced by and from the animal; and, therefore, embraced within the scope of other like animals must be included all animals producing wool or hair like that of the sheep or camel, of which the hair of the Angora goat, alpaca, and others are distinctly and unquestionably of a

class.  Moreover, the title of the schedule is "Wool, and manufactures of."
While the rule is, of course, that the title of an act or of a paragraph does not
control the legislation embraced therewithin, it is in cases of doubt an accepted
source of information and can always be looked to as one of the guides to the
legislative purpose.  This rule obtains as to the schedule titles in tariff laws.
The doctrine is appropriately stated in *Hollender* v. *Magone* (149 U. S. 586, 591),
wherein the Supreme Court said:

> The multitude of articles upon which duty was imposed by the tariff act of
> 1883 are grouped in that act under 14 schedules, each with a different title, and
> all that was intended by those titles *was a general suggestion as to the character of
> the articles within the particular schedule,* and not any technically accurate defini-
> tion of them.

See also *Wilson et al.* v. *Spalding,* 19 Fed. 304.

For the purposes of this case we proceed upon the theory that
camel's-hair noils are included within the provision of paragraph 651,
supra, for "all noils," and that "noils" have been provided for in
various tariff acts as a distinct tariff entity.

In the case of *United States* v. *Rice & Fielding, supra,* upon the
record then before the court, it was held:

> It is conceded that the camel's hair was washed and scoured before these noils
> were produced.  Therefore, without passing upon their dutiability under para-
> graph 18 we see no escape from the conclusion that these noils are dutiable under
> paragraph 19 of the emergency act.
>
> Although noils, they are also camel's hair advanced equally with the tops
> produced at the same time.  In other words, the original camel's hair by the
> combing process has been separated into two articles, one known as tops and
> the other as noils, but each still is camel's hair advanced.  Clearly this hair has
> been advanced beyond the washed or scoured condition.  Paragraph 19 does not
> provide that wool or hair must be advanced by any process of manufacture
> beyond the washed or scoured condition, but declares that if advanced in *any
> manner* beyond that condition they shall be dutiable.
>
> We think it was the intention of Congress as manifested by paragraphs 18 and
> 19 to declare that wool, commonly known as clothing wool, as well as the hair
> of the camel, if advanced in any manner beyond the washed or scoured condition,
> should, for the short period during which the emergency act was to be in force,
> pay the rates of duty therein provided, regardless of a recognized tariff entity
> under the act of 1913 and regardless also of whether under the preceding act such
> hair was dutiable or free.

The court furthermore considered and distinguished the case of
*United States* v. *Davies,* 11 Ct. Cust. Appls. 392, T. D. 39316, from
the case then under consideration.  Counsel has again called atten-
tion to the decision in that case and again insists that that decision is
controlling here.  We are unable to more clearly or simply explain
the evident distinction between the two cases than was expressed by
Judge Barber in *United States* v. *Rice & Fielding, supra.*

It is clearly established by the evidence in the record that camel's-
hair noils are a waste resulting from the process of combing camel's
hair, the purpose of which process is to secure camel's-hair "tops,"
and that such noils must be reworked; that is, put through a carding
process as the first operation in their conversion into yarn.

However, it plainly appears that camel's-hair noils have been separated by a mechanical operation from camel's-hair tops; and camel's-hair noils, as such, have been advanced by that very operation from their condition in the fleece to their imported condition; that is, entirely separated from the long fibers of hair. The long and short fibers of camel's hair had to be separated in order to procure either the tops or the noils. The carding and combing processes through which the hair is put accomplishes that very thing, and the fact that such operations may accomplish more by advancing the long fibers into a more nearly finished product, which was the purpose of the operation, does not alter the fact that noils have been advanced beyond their scoured condition in the fleece.

When the long and short fibers of hair have been separated each has been advanced in condition. Each has a new name and a different commercial status, and each is recognized as a distinct tariff entity. The fact that the hair of the camel in its scoured condition, which includes both the long and short fibers, is worth more than the noils, does not prove that the short fibers are worth more in the fleece than when advanced into noils. But whether enhanced in value or not, it seems perfectly obvious to us that camel's-hair noils are camel's hair advanced in condition.

Counsel have called to our attention the decision of this court in the case of *United States* v. *Hogan*, 12 Ct. Cust. Appls. 121, T. D. 40048. It is urged that our holding in that case and the reasoning upon which it was based are controlling of the issues here. The court had under consideration in that case the question as to whether "press cloth composed of camel's hair, imported expressly for oil milling purposes, and marked so as to indicate that it was for that purpose," and cut into lengths not exceeding the prescribed statutory length, "and woven in widths not under 10 inches nor over 15 inches," and weighing "not less than one-half pound per square foot," was free of duty under paragraph 422 of the tariff act of 1913, or whether it was dutiable by virtue of the provision of paragraph 19 of the emergency tariff act for "manufactures of which wool or hair of the kind provided for in paragraph 18 is the component material of chief value, 45 cents per pound in addition to the rates of duty imposed thereon by existing law."

The tariff act of 1913 contained two provisions relating to press cloth composed of camel's hair.

Paragraph 288 provided in part as follows:

PAR. 288. * * * press cloth composed of camel's hair *not specially provided for in this section,* 10 per centum ad valorem. (Italics ours.)

The pertinent part of paragraph 422 reads as follows:

PAR. 422. * * * Press cloths composed of camel's hair, imported expressly for oil milling purposes, and marked so as to indicate that it is for such purposes,

and cut into lengths not to exceed seventy-two inches and woven in widths not under ten inches nor to exceed fifteen inches and weighing not less than one-half pound per square foot.

The court, reaffirming the holding in the case of *United States* v. *Davies Co.*, 11 Ct. Cust. Appls. 392, T. D. 39317, that the emergency tariff act of 1921 did not repeal the tariff act of 1913, but was merely amendatory of that act in certain respects only, leaving the provisions not affected thereby to continue in full force and effect, held that paragraph 422, supra, was not amended by paragraph 19 of the emergency act. This conclusion was based upon several considerations, one of which was the phraseology of paragraph 19, supra. With regard to the language "in addition to the rates of duty imposed thereon by existing law," contained in that paragraph, the court said:

> The natural import of this language was to impose a cumulative rate of .duty upon articles which were already dutiable by law, for they were the only ones which could be subjected to rates of duty in addition to the rates then imposed upon them by existing laws. The word "additional" signifies "the joining together of several things into one amount." (Oxford Dictionary.) * * *

> In the case now at bar the considerations which aid in the construction of the controlling paragraph tend to sustain the claim for free entry, for there is no reason to believe that Congress intended in the emergency act to depart from its *policy of favoring this particular kind of press cloth, to which it had specifically granted free entry in the act of 1913*. It may well be assumed that if such had been the legislative purpose it would have been expressed in some more definite form than appears in the emergency act. (Italics ours.)

It will be noted that paragraph 288 of the tariff act of 1913 provided generally for press cloth composed of camel's hair not specially provided for, at 10 per centum ad valorem, while paragraph 422 of that act provided for a particular kind of press cloth, with a most minute description of the cloth intended to be included within its provisions. To come within the paragraph, it was required that the cloth be composed of camel's hair; it had to be imported expressly for oil-milling purposes; it had to be marked so as to indicate that it was to be used for such purposes; it was required to be cut into lengths not exceeding 72 inches and woven in widths not under 10 inches nor over 15 inches; and it was required to weigh not less than one-half pound per square foot.

A more careful or minute description of a particular kind of a class of articles would be difficult to formulate.

It could not have been the purpose of Congress to amend paragraph 422 of the act of 1913 by the general provision in paragraph 19 of the emergency act for manufactures of camel's hair, especially when paragraph 288 of the act of 1913 contained a general provision for press cloth composed of the same kind of hair.

There is a marked distinction between the issues considered and determined in that case and those under consideration in this case.

Paragraph 651 of the tariff act of 1913 provides for "all noils," which included the camel's-hair noils involved in this case.

Paragraph 19 of the emergency act provides for "wool and hair of the kind provided for in paragraph 18, *when advanced in any manner or by any process of manufacture beyond the washed or scoured condition.*" (Italics ours.)

The quoted language of the court in the case of *United States* v. *Hogan, supra,* is open to the interpretation that paragraph 19 was intended to amend only the dutiable provisions of the tariff act of 1913. Upon reconsideration we think that the language used in that case was too comprehensive. It was *applied* and should be *confined* to the issues there involved. The words "in addition to the rates then imposed upon them by existing law" should be read and interpreted in connection with the remainder of the paragraph, as well as paragraph 18, supra, and when so read and interpreted it is manifest that Congress intended to include within the provisions of those paragraphs unwashed, washed, sorted, and scoured camel's hair and such hair when advanced in any manner beyond the scoured condition, whether or not a separate tariff entity and whether dutiable or free of duty under the tariff act of 1913.

The judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.