UNION BROKERAGE CO., INC. *v.* UNITED STATES (No. 4238)[1]

---

[1] C. A. D. 92.

United States Court of Customs and Patent Appeals, January 4, 1940

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Richard H. Welsh*, special attorney, of counsel), for the United States.

[Oral argument December 7, 1939, by Mr. Schwartz and Mr. Welsh]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

Lenroot, Judge, delivered the opinion of the court:

In 1936 appellant imported at Portal, N. Dak., 31 shipments of live cattle. The weighers of the cattle reported to the collector with respect to some of the importations both gross and net weights, making allowances for tare in reporting the net weight. Some of the entries were liquidated upon the net weights reported, while others were liquidated upon the gross weights. Those entries which were liquidated upon the net weights of the cattle were reliquidated upon their gross weights, pursuant to instructions of the Commissioner of Customs that no allowance for tare was permissible.

Five protests were filed by appellant claiming that the entries should have been liquidated upon their net weights and that the tare reported by the weighers should have been allowed. Before the Customs Court the protests were consolidated for purposes of trial.

The only evidence introduced in the trial consisted of the official reports of the United States weigher, including the dock books. This evidence shows that in some instances the tare allowed, found by the weighers, consisted of "excess dung." Upon oral argument before us appellant's counsel conceded that all of the tare here involved consisted of excess dung. The Government contends that the so-called tare consisted of dung and other filth.

The Customs Court overruled the protests, holding that appellant had not overcome the presumption of the correctness of the collector's liquidation, and that the burden was upon appellant to establish that the reported tare consisted of impurities not usually found in or upon such or similar merchandise, which it failed to do.

From the judgment entered by the Customs Court in accordance with its aforesaid holding, this appeal was taken.

Sections 505 and 507 of the Tariff Act of 1930 read as follows:

SEC. 505. PAYMENT OF DUTIES.

The consignee shall deposit with the collector, at the time of making entry, unless the merchandise is entered for warehouse or transportation, or under bond, the amount of duty estimated to be payable thereon. Upon receipt of the appraiser's report and of the various reports of landing, weight, gauge, or measurement the collector shall ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise as provided by law and shall give notice of such

# 240

liquidation in the form and manner prescribed by the Secretary of the Treasury, and collect any increased or additional duties due or refund any excess of duties deposited as determined on such liquidation.

SEC. 507. TARE AND DRAFT.

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.

Articles 813, 1346, 1348, and 1355 of the Customs Regulations of 1931 read as follows:

Art. 813. Application—Procedure.—(a) Application for an allowance for excessive moisture or other impurities shall be made on customs Form 4317 and filed with the collector of customs within 10 days after the return of weight has been received by him. The collector shall stamp the application with the date of receipt in the customhouse.

(b) The collector shall cause such investigation to be made as may be necessary to determine whether or not the merchandise contains excessive moisture or other impurities not usually found in or upon such or similar merchandise, together with the amount thereof, and may, if necessary, refer the application to the appraiser for such determination.

(c) If the collector shall be satisfied from the reports received that the claim is valid, due allowance shall be made in the liquidation of the entry.

Art. 1346. Return of weights—Special returns.—(a) Weighing officers will make a return of the weight on customs Form 5985 or on the invoice if more practicable of the articles embraced in each permit or order immediately after such weight has been ascertained or as soon thereafter as practicable. Weighing officers will file their completed books of weights in the surveyor's office as public records within three days after completion of weighing of the cargo. Not more than one vessel's cargo will be entered in a book.

(b) When a permit or order directs a special return to be made, the weighing officer will immediately weigh the goods designated and make a return thereof

(c) Certificates or copies of weights will be furnished to parties in interest at their expense by the surveyor at ports where there is such an officer; elsewhere by the collector.

Art. 1348. Increase of weight by moisture, etc.—Officers weighing will not make an allowance for draft, impurities, or increase of weight caused by absorption of moisture on the voyage of importation or for any other cause, and the actual weight, as acertained after landing, will be returned; but they will note in the dock book the condition of the package as found.

\* \* \* \* \* \* \*

Art. 1355. Tare.—(a) The net weight of merchandise dutiable by net weight, or upon a value dependent on net weight, will be determined by deducting the invoice tare, schedule tare, or actual tare from the gross weight.

(b) The department from time to time will publish lists of tares which from experience have proved to be the average weight of coverings of certain classes of merchandise. Such tares will be known as schedule tares and may be accepted as the tare in ascertaining the net weight of such merchandise, unless the importer requests in writing at the time of entry that actual tare be taken.

\* \* \* \* \* \* \*

(e) Actual tare.—If the importer shall be dissatisfied with the invoice tare or with the schedule tare, or if the collector shall be of the opinion that the invoice

or schedule tare would not correctly represent the tare of the merchandise, or if the weigher has reason to believe that the invoice or schedule tare is greater than the real tare, the actual tare will be ascertained, and in so doing the weigher will empty and weigh as many casks, boxes, and other coverings as he may deem necessary. He will so note in his return at the head of the column of tares whenever the tare returned by him is actual tare.

. (f) When it is impracticable to ascertain the actual tare, the weigher will state in his return what, in his judgment, constitutes a fair tare allowance.

It is conceded that appellant did not comply with article 813 of said regulations, and appellant contends that there was no occasion for him to do so as the official weigher lawfully determined the amount of tare, which appellant accepted, and that it was the duty of the collector to accept the net weights reported by the official weigher; that those net weights were presumptively correct, and that upon their introduction in evidence the presumption of correctness of the collector's liquidation was overcome; that thereafter the burden was upon the Government to show that the tare allowed by the weigher did not consist of impurities not usually found upon such cattle.

The real question before us is whether the weigher was authorized by the regulations above quoted to determine the amount of impurities found upon cattle and make allowance therefor as tare, or whether the determination of this question rested upon the collector. If such authority was vested in the collector the judgment should be affirmed.

Appellant relies upon paragraphs (e) and (f) of article 1355, *supra*, in support of its contention that the weigher was vested with authority to determine the amount of impurities in imported merchandise not usually found upon such merchandise and to make allowance for the same as tare, and contends that the collector was bound to accept the report of tare found by the weigher. Were it not for article 1348, *supra*, the argument of appellant's counsel would be very persuasive, but it will be observed that article 1348 expressly forbids the weighing officers to make any allowance for impurities, and merely requires them to make a notation in the dock book of the condition of the package as found.

It is well established that specific terms in a statute covering the given subject matter will prevail over general language of the same statute which might otherwise prove controlling. *Kepner* v. *United States*, 195 U. S. 100; *United States* v. *Chase*, 135 U. S. 255; *United States* v. *Hogan*, 12 Ct. Cust. Appls. 121, T. D. 40048. Of course the same rule applies to regulations issued by public officers pursuant to statutory authority.

Inasmuch as article 1348 expressly prohibits weighing officers from making such allowances from gross weights as are here involved, it follows that the collector was not bound to accept such allowances as were made by the weigher in the case at bar. The findings of the weighing officer in this respect were merely for the information of the

242

collector in liquidating the entries, and the collector was not bound to accept them.

Article 813, *supra*, clearly vests in the collector the duty of ascertaining impurities not usually found in or upon such or similar merchandise upon application made to him for that purpose. Nowhere in the statute or regulations is there any duty devolved upon weighers to determine this question, and it seems clear that when the question is presented the only administrative officer authorized to decide it is the collector.

Whether appellant in this proceeding would have been entitled to offer proof upon the trial before the Customs Court with respect to the amount of impurities upon the cattle, not having made application for such allowance under the provisions of article 813, we need not here determine for no such offer was made.

For the reasons hereinbefore stated, the judgment of the Customs Court is *affirmed*.